UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

TAMARAC 10200, LLC and                    Case No. _____
UNIPHARMA, LLC,                            Case No. _____

      Debtors[1].                         Chapter 11 Cases
                                           (Joint Administration Pending)

_____/

**DEBTORS' APPLICATION, PURSUANT TO SECTIONS 105(a) AND 363(b)
OF THE BANKRUPTCY CODE, FOR APPROVAL OF AGREEMENT WITH
SOLIC CAPITAL ADVISORS, LLC AND SOLIC CAPITAL, LLC TO PROVIDE
THE SERVICES OF (I) NEIL F. LURIA AS CHIEF RESTRUCTURING OFFICER,
(II) CERTAIN OTHER INTERIM OFFICERS, AND (III) CERTAIN SUPPORT
PERSONNEL EFFECTIVE AS OF THE PETITION DATE**
**[Expedited Hearing Requested]**

Tamarac 10200, LLC ("Tamarac") and Unipharma, LLC ("Unipharma", and together with

Tamarac, the "Debtors"), by and through their proposed undersigned counsel, pursuant to 11

U.S.C. §§ 105(a) and 363(b), file this *Debtors' Application, Pursuant to Section 363(b) of the*

*Bankruptcy Code, for Approval of Agreement with SOLIC Capital Advisors, LLC and SOLIC*

*Capital, LLC to Provide the Services of (I) Neil F. Luria as Chief Restructuring Officer, (II)*

*Certain Other Interim Officers, and (III) Certain Support Personnel Effective as of the Petition*

*Date* (the "Application"). The Application seeks entry of an order authorizing the retention of

SOLIC Capital Advisors, LLC and SOLIC Capital, LLC (together, "SOLIC") to provide (a) the

services of (i) Neil F. Luria ("Luria"), as chief restructuring officer ("CRO"), (ii) S. Waite Popejoy

III, as Chief Financial Officer (the "CFO"), (iii) Gregory Hagood, as Executive Vice President of

Strategy (the "EVP of Strategy"), (iv) Robert Annas, as Executive Vice President of Operations

_____

[1] The last four digits of each Debtor's federal tax identification number are Tamarac 10200, LLC (2050)
and Unipharma, LLC (8962). The address of the Debtors is 10200 N.W. 67th Street, Tamarac, FL 33321.

(the "EVP of Operations"), (v) Matthew Caine, as Vice President of Strategy (the "VP of Strategy"), and (vi) Mary Dressler, as the Director of Strategy (the "Director of Strategy", and together with the CRO, the CFO, the EVP of Strategy, the EVP of Operations, and the VP of Strategy, the "Interim Officers"); and (b) the services of certain support personnel.  In support of the Application, the Debtors rely upon the *Declaration of Neil F. Luria in Support of Debtors' Application for Approval of Agreement with SOLIC Capital Advisors, LLC and SOLIC Capital, LLC to Provide Services of (I) Neil F. Luria as Chief Restructuring Officer, (II) Certain Other Interim Officers, and (III) Certain Support Personnel* (the "Luria Declaration") attached hereto as **Exhibit "A"**, and respectfully represent as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 105(a), 363(b), 503, 507(a)(8), 541, 1107(a) and 1108 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

4.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2

6.    For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the *Declaration of Neil F. Luria in Support of the Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration").

7.    Prior to the Petition Date, on October 18, 2020, SOLIC was retained in connection with the Debtors' financial and operational restructuring. Subsequently, on November 10, 2020, the Board of Unipharma and Manager of Tamarac appointed Luria as CRO, an appointment which Luria accepted on the same date.  Pursuant to the agreement between the Debtors and SOLIC dated November 10, 2020 attached hereto as **Exhibit "B"** (the "Agreement"), SOLIC agreed to provide: (a) the services of Neil F. Luria as CRO, (b) the services of the other Interim Officers, and (c) the services of certain support personnel.

## Qualifications

8.    The Debtors have determined in an exercise of their business judgment that retaining SOLIC and the services of the Interim Officers and other employees at SOLIC will assist the Debtors in maximizing and preserving the value of their assets, and provides the Debtors with the best opportunity under the circumstances to achieve a successful sale of their assets. Accordingly, the Debtors appointed Luria to the position of CRO and, subject to the Court granting this Application, will utilize SOLIC personnel as described herein and in the Agreement.

9.    SOLIC is a professional services firm engaged in the business of providing restructuring, financial advisory and distressed asset management services, with offices located at 425 West New England Avenue, Suite 300, Winter Park, Florida 32789.  SOLIC provides services to a variety of businesses with a large range of enterprise values, including publicly traded and private companies. Since its original engagement by the Debtors, SOLIC has been assisting the

Debtors with respect to, among other things, managing liquidity, seeking additional capital, and analyzing potential strategic alternatives.

10.     SOLIC has widespread experience in providing restructuring and financial advisory services in reorganization proceedings, and it has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States. SOLIC's professionals have represented various stakeholders in a number of distressed healthcare and non-healthcare situations over the last 15 years, including unsecured creditors, senior lenders, equity holders, and debtors in matters both in and out of court. Furthermore, the SOLIC professionals involved in the Debtors' chapter 11 cases have been involved in other Chapter 11 bankruptcies in recent years, including *In re SLT Holdco, Inc.*, Case No. 20-89368 (Bankr. D.N.J 2020), *In re Thomas Health System, Inc.*, Case No. 20007 (Bankr. S.D.W.V 2020), In re LMCHH PCP, LLC, Case No. 17-10353 (Bankr. E.D. La. 2017), *In re Life Care St. Johns, Inc.*, Case No. 3:13-bk-4158-JAF (Bankr. M.D. Fla. 2013), *In re Ocala Funding, LLC*, Case No. 3:12-bj0945240-JAF (Bankr. M.D. Fla. 2012), and *In re Taylor Bean & Whitaker Mortgage Corp.*, Case No. 3:09-bk-07047-JAF (Bankr. M.D. Fla. 2009).

11.     Mr. Luria serves as President and leads SOLIC's Restructuring and Distressed Asset Support Services divisions. He specializes in capital restructuring, operational remediation, alternative recovery strategy, and execution support on behalf of SOLIC's clients. He has significant experience negotiating and restructuring balance sheet obligations and overseeing asset divestitures and orderly liquidations. Mr. Luria has served in the capacity of Chief Restructuring Officer in numerous matters, including serving as: (a) Chief Restructuring Officer of Taylor, Bean & Whitaker Mortgage Corp., (*In re Taylor Bean & Whitaker Mortgage Corp.*, Case No. 3:09-bk-07047-JAF (Bankr. M.D. Fla. 2009)), (b) Chief Restructuring Officer of Louisiana Medical Center

4

and Heart Hospital (*In re LMCHH PCP, LLC*, Case No. 17-10353 (Bankr. E.D. La. 2017)), (c) PBI Regional Medical Center (*In re Beth Israel Hospital Association of Passaic d/b/a PBI Regional Medical Center*, Case No. 06-16186 (Bankr. D.N.J 2008)), and (d) Chief Restructuring Officer of Ocala Funding, LLC (*In re Ocala Funding, LLC*, Case No. 3:12-bj0945240-JAF (Bankr. M.D. Fla. 2012)). In addition, Mr. Luria has served as Liquidating Trustee of a number of entities which formed upon consummation of successful chapter 11 cases, including in the chapter 11 cases of SageCrest LLC, Mortgage Lenders Network USA, and Orthodontic Centers of America.

12.     Tamarac and Unipharma retained SOLIC as an advisor on October 18, 2020. SOLIC since has acquired knowledge of the Debtors and their business, and now is familiar with the Debtors' business, financial affairs, debt structure, operations and strategic challenges. During the relatively brief tenure of its retention by Tamarac and Unipharma, SOLIC has engaged extensively with the Debtors' employees and the Debtors' other advisors. SOLIC has also engaged on the Debtors' behalf with multiple significant stakeholders of the Debtors, including the Debtors' secured creditors. Accordingly, SOLIC has developed relevant experience regarding the Debtors that will assist it in providing effective and efficient services to the Debtors in these bankruptcy cases.

13.     The Debtors believe that SOLIC is well qualified and able to advise it in a cost-effective, efficient and timely manner.  The Debtors have been advised by SOLIC that it will endeavor to coordinate with the other professionals retained in these bankruptcy cases to prevent unnecessary duplication of work. Therefore, the Debtors submit that the retention and employment of SOLIC is in the best interest of their estates.

10130881-7

### Services to be Rendered

14.    As per the terms contained in the Agreement, attached hereto as **Exhibit "B"**, at the request and direction of the Debtors, SOLIC's role will specifically include working with the Debtors' Board and its officers, employees, and professionals with respect to the following:

(a) Provision of Mr. Luria to serve as the CRO, Mr. Waite Popejoy to serve as the CFO, Mr. Gregory Hagood to serve as the EVP of Strategy, Mr. Robert Annas to serve as the EVP of Operations, Mr. Matthew Caine to serve as the VP of Strategy, and Ms. Mary Dressler as the Director of Strategy.

(b) The CRO and the CFO will work with the Board and its officers, employees and professionals with respect to the following (the "Restructuring Services"):

  i.    Management of the "working group" of professionals who are assisting the Debtors in the reorganization process to enhance coordination of their efforts and individual work product consistent with the Debtors' overall restructuring goals;

  ii.    Providing the Debtors assistance in connection with the development of a rolling 13-week cash flow forecast;

  iii.    Reviewing the Debtors' current financial position, operation trends, capital needs, financial outlook, standalone viability and market position;

  iv.    Assisting management in the development of an integrated financial forecast model;

  v.    Assisting in the preparation of statements of financial affairs, schedules of assets and liabilities, monthly operating reports, disclosure statement analyses, or other financial analyses or reports as may be reasonably necessary in conjunction with such proceedings;

  vi.    At the request of the Debtors, assisting management and the Debtors' legal counsel in the review of any threatened or unforeseen litigation, contingent liabilities, and regulatory related or submission requirements;

  vii.    Reviewing the Debtors' budgets and cash flow forecasts;

  viii.    Communicating and/or negotiating with outside constituents, including creditors and their advisors;

6

ix. Consideration and identification of potential opportunities for a sale, merger, recapitalization, or reorganization (a "Transaction")[2] of the Debtors or the assets of the Debtors;

x. Advising the Debtors concerning opportunities for a Transaction or Transactions;

xi. Participating with the Debtors' counsel on the Debtors' behalf in negotiations concerning a Transaction or Transactions; and

xii. Providing oversight and management of the post-sale and post-bankruptcy wind-down and orderly liquidation of the Debtors' remaining assets and liabilities through a Plan of Liquidation or otherwise. Following the closing of a Transaction, such wind-down activities may include: monitoring of the Debtors' compliance with all post-closing obligations, assisting in development and maintenance of wind-down budgets, monitoring the resolution of employee-related liabilities (accrued payroll, severance retirement benefits and termination of associated retirement plans or medical plans), negotiation and settlement of direct claims impacting the debtors.

(c) The EVP of Strategy, the VP of Strategy, and the Director of Strategy will work with the Board and its officers, employees, and professionals to provide the Transactional Services described in the Agreement.

(d) Given the dynamic state of the Debtors' affairs, SOLIC will supplement the Interim Officers from time to time, as deemed necessary by the CRO to provide the services described in the Agreement. The work of individuals other than the CRO, the CFO, the EVP Strategy, the VP of Strategy, and the Director of Strategy will be deemed to be "Supplemental Support Services". The Supplemental Support Services shall also include any operational assistance or other services provided by Robert Annas, bankruptcy administrative services provided by SOLIC professionals other than the Interim Officers, human resources assistance by Meg Finnegan, information technology assistance, and/or litigation support or other forensic investigatory work undertaken by SOLIC professionals at the direction of counsel.

---

[2] "Transaction" is defined in the Agreement, and includes, without limitation, any transaction or series or combination of transactions, whereby, directly or indirectly, control of, or a material interest in, the Debtors or any of their businesses or any of their respective assets (including, without limitation, the sale of real estate, equipment, medical supplies, pharmaceuticals, accounts receivable, or contractual agreements to one or more third parties), is transferred for consideration, including, without limitation, a sale or exchange of capital stock or assets, a lease of assets with or without a purchase option, a merger or consolidation, a tender or exchange offer, a restructuring, a recapitalization, a repurchase of capital stock, an extraordinary dividend or distribution, the formation of a joint venture, strategic affiliation or partnership, or any similar transaction.

7

**Terms of Retention and Compensation**

15.     The terms of SOLIC's proposed compensation are set forth in the Agreement.  The Debtors request that SOLIC be compensated for its services to the Debtors during the course of these bankruptcy cases as follows. As compensation of the Restructuring Services and Transaction Services, SOLIC will be paid a monthly fee (the "Monthly Fee") of $275,000 for the first two months following execution of the Agreement, $250,000 for the next two months, and $225,000 per month thereafter, payable in advance in immediately available funds (via the wire instructions set forth on Exhibit A to the Agreement) on each monthly anniversary of the execution of the Agreement (or the next business day if such day falls on a weekend or holiday).

16.     With respect to any Supplemental Support Services provided by SOLIC professionals under the Agreement, SOLIC shall be compensated on an hourly basis at the respective SOLIC professional's standard hourly rates (the "Hourly Fees") as set forth in the table below (which fees will be subject to periodic adjustment upon notice to the Debtors to reflect economic and other conditions):

| • Senior Managing Directors/Senior Advisors | $725-995/hr |
|---|---|
| • Managing Directors | $695-825/hr |
| • Directors | $550-695/hr |
| • Vice President | $450-550/hr |
| • Senior Associate | $350-450/hr |
| • Associates / Analysts | $245-350/hr |
| • Paraprofessionals | $95-175/hr |

17.     In addition to the Monthly Fees and the Hourly Fees, in the event of a Transaction, the Debtors agree to pay SOLIC a "Deferred Restructuring Fee" equal to $500,000 upon the close or other consummation of a Transaction (as defined and discussed in the Agreement).

18.     As of the Petition Date, SOLIC held a retainer from the Debtors in the amount of $100,000.00 (the "Retainer"). Pursuant to the Agreement, the Debtors have agreed that the amount

8

of the Retainer held by SOLIC will at all times be not less than $100,000.00, and that the Debtors will, from time to time, remit to SOLIC such additional amounts as may be necessary to maintain the total amount of the Retainer at $100,000.00.  As set forth in the Agreement, any unused Retainer shall be applied to the final invoice or returned at the termination of SOLIC's engagement.

19.     The Debtors also have agreed to reimburse SOLIC for its reasonable expenses, including out-of-pocket travel-related expenses, document production, fax transmissions, teleconferencing charges, legal fees and other expenses of this type that are associated with the Agreement (including, fee application expenses and discovery costs and defense costs, provided that SOLIC shall not seek reimbursement of any expense arising from the defense of any of SOLIC's fee applications in these bankruptcy cases).

20.     As described more fully in the Luria Declaration, the terms of the Agreement are similar to the terms, both financial and otherwise, agreed to by SOLIC, both inside and out of bankruptcy.  The terms of the Agreement were negotiated between the Debtors and SOLIC and reflect extensive work to be performed by SOLIC in these bankruptcy cases and the firm's expertise.

21.     Because the Debtors seek to retain SOLIC pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors request that SOLIC not be required to submit regular applications to this Court approving its compensation. The Debtors submit that SOLIC's proposed compensation structure, as described in the Agreement, should be approved.

22.     Other than as set forth herein, no arrangement is proposed between the Debtors and SOLIC for compensation to be paid in these bankruptcy cases.  In light of the above, the Debtors submit that such proposed compensation is fair and reasonable and should be approved pursuant to the Bankruptcy Code.

23.     The Agreement shall be: (a) governed and construed in accordance with the laws of Florida, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporated the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified except in writing executed by each of the signatories thereto.

### Applicable Authority

24.     Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue an order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 363(b) of the Bankruptcy Code provides in part that a debtor-in-possession "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  Under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  See, e.g., *In re Gulf States, Steel, Inc.*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1983); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct").

10130881-7

25.     The retention of interim corporate officers and other temporary employees is proper under section 363 of the Bankruptcy Code.  Courts in Florida have authorized retention of temporary employees to provide restructuring services and interim management services under 363 of the Bankruptcy Code.  See *In re Adinath Corp., et al.*, Case No. 15-16885-LMI (Bankr. S.D. Fla. May 8, 2015); *In re Ruden McClosky P.A.*, Case No. 11-40603-RBR (Bankr. S.D. Fla. December 5, 2011); *In re Old Corkscrew Plantation, LLC, et al.*, Case No. 11-14559-BSS (Bankr. M.D. Fla. August 25, 2011); *In re Robb & Stucky Limited LLLP,* Case No. 11-02801-CED (Bankr. M.D. Fla. March 25, 2011); *In re Adinath Corp., et al.,* Case No. 15-16885-LMI (Bankr. S.D. Fla. Apr. 21, 2015); *In re Star Computer Group, Inc.,* Case No. 15-28100-AJC (Bankr. S.D. Fla. October 21, 2015); *In re The Treatment Center of the Palm Beaches, LLC,* Case No. 18-14622-EPK (Bankr. S.D. Fla. July 18, 2018); *In re Just One More Restaurant Corp., et al.,* Case No. 19-01947-FMD (Bankr. M.D. Fla. Apr. 16, 2019); *In re Ocala Funding, LLC*, Case No. 3:12-bj0945240-JAF (Bankr. M.D. Fla. 2012), and *In re Taylor Bean & Whitaker Mortgage Corp*., Case No. 3:09-bk-07047-JAF (Bankr. M.D. Fla. 2009).

26.     The Debtors' proposed retention and employment of SOLIC satisfies the applicable authority and is a sound exercise of the Debtors' business judgment.  To assist in their restructuring efforts, the Debtors need specialized advice from experienced operations professionals.  As described in the Luria Declaration, Luria, the other Interim Officers, and the proposed SOLIC support staff have vast experience with restructuring similar organizations and have already been providing services to the Debtors under the Agreement.  Luria, the other Interim Officers, and SOLIC thus are uniquely qualified to provide the proposed services to the Debtors, which are necessary for the Debtors to navigate these bankruptcy cases. Accordingly, the Debtor submit that the relief sought herein is in the best interest of the Debtors, their creditors and other parties in

10130881-7

interest, and, as such, is well within the Debtors' reasonable judgment and should be approved by the Court.

27.    The Debtors request that the retention of SOLIC be approved effective as of the Petition Date.

28.    Because SOLIC's work is ongoing and essential to the Debtors' reorganization, the Debtors request that the Court consider this Application on an expedited basis.  While this application is not made under Rule 2014 and, thus, Rule 6003 is inapplicable, the Debtors propose the entry of an interim order on an expedited basis subject to entry of a final hearing upon 21 days' notice.

WHEREFORE, the Debtors respectfully request the entry of an Order, in the form attached hereto as **Exhibit "C"**: (a) granting this Application; (b) approving, pursuant to section 105(a) and 363(b) of the Bankruptcy Code, (i) the retention and employment by the Debtors of SOLIC pursuant to the terms of the Agreement, effective as of the Petition Date and (ii) the terms of the Agreement, including the proposed fee structure and indemnification provisions as set forth in the Agreement; and (c) granting such other and further relief as the Court deems appropriate.

Dated:  December 7, 2020

TAMARAC 10200, LLC and UNIPHARMA, LLC
10200 N.W. 67th Street
Tamarac, FL  33321
By:

Alan Petro, Chief Executive Officer

12

10130881-7

# EXHIBIT A
**(Luria Declaration)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

TAMARAC 10200, LLC and             Case No. _____
UNIPHARMA, LLC,                    Case No. _____

      Debtors[1].                    Chapter 11 Cases
                                   (Joint Administration Pending)

_____/

**DECLARATION OF NEIL F. LURIA IN SUPPORT OF DEBTORS' APPLICATION
FOR APPROVAL OF AGREEMENT WITH SOLIC CAPITAL ADVISORS, LLC
AND SOLIC CAPITAL, LLC TO PROVIDE THE SERVICES OF (I) NEIL F. LURIA
AS CHIEF RESTRUCTURING OFFICER, (II) CERTAIN OTHER INTERIM
OFFICERS, AND (III) CERTAIN SUPPORT PERSONNEL**

Neil F. Luria, under penalty of perjury, hereby declares as follow:

1.      I am a Senior Managing Director at SOLIC Capital Advisors, LLC.  SOLIC Capital

Advisors, LLC is a professional services firm engaged in the business of providing financial

advisory and distressed asset management services, with offices located at 425 West New England

Avenue, Suite 300, Winter Park, Florida 32789. SOLIC Capital, LLC operates out of the same

offices, and also provides investment banking, private placement, merger, acquisition, and

divestiture services (SOLIC Capital, LLC and SOLIC Capital Advisors, LLC, "SOLIC").  This

Declaration is submitted in support of *Debtors' Application, Pursuant to Section 105(a) and 363*

*of the Bankruptcy Code, for Approval of Agreement with SOLIC Capital Advisors, LLC and SOLIC*

*Capital, LLC to Provide Services of (I) Neil F. Luria as Chief Restructuring Officer, (II) Certain*

*Other Interim Officers, and (III) Certain Support Personnel Effective as of the Petition Date* (the

"Application"). Except as otherwise indicated, the statements contained herein are based upon

---

[1] The last four digits of each Debtor's federal tax identification number are Tamarac 10200, LLC (2050) and Unipharma, LLC (8962).  The address of the Debtors is 10200 N.W. 67th Street, Tamarac, FL 33321.

personal knowledge, information provided by my colleagues or support staff at SOLIC, or information I obtained by reviewing relevant documents.

2. To the extent that any information disclosed herein requires amendment, modification, or supplement due to SOLIC's receipt of additional information (including as additional creditor information becomes available), a supplemental declaration will be submitted to the Court.

3. Prior to the Petition Date, on October 18, 2020, the Debtors employed SOLIC in connection with their financial and operational restructuring. Subsequently, on November 10, 2020, the Board of Unipharma and the Manager of Tamarac each appointed me as CRO; an appointment I accepted. Pursuant to the agreement between the Debtors and SOLIC dated November 10, 2020 attached hereto as **Exhibit "A"** and described in some detail below (the "Agreement"), SOLIC agreed to provide: (a) my services as CRO, (b) the services of the other Interim Officers (as defined below), and (c) the services of certain support personnel. To ensure that SOLIC was not and would not become a creditor of the Debtors: (i) in connection with SOLIC's retention, the Debtors provided SOLIC with an initial retainer in the amount of $100,000 (as drawn and refreshed from time to time, the "Retainer") to secure payment for services to be rendered by SOLIC, (ii) the Debtors have prepaid SOLIC for services rendered, and (iii) the Debtors have refreshed the Retainer. As a result, SOLIC at all times since its employment by the Debtors has maintained a Retainer balance in excess of the value of services rendered but unpaid.

4. SOLIC provides a broad range of services to its clients, and it has extensive experience in dealing with a full range of issues and challenges that arise in corporate restructurings and business reorganizations. SOLIC's professionals have represented various stakeholders in a number of distressed situations over the last 15 years, including unsecured

2

creditors, senior lenders, equity holders, and debtors. SOLIC's widespread experience in providing restructuring and financial advisory services includes reorganization proceedings, through which SOLIC has earned an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors, creditors, and other stakeholders. In the recent years, the SOLIC professionals who are involved in the Debtors' Chapter 11 cases have been involved in myriad Chapter 11 bankruptcies, including *In re SLT Holdco, Inc*., Case No. 20-89368 (Bankr. D.N.J 2020), *In re Thomas Health System, Inc*., Case No. 20-20007 (Bankr. S.D.W.V 2020), *In re LMCHH PCP, LLC*, Case No. 17-10353 (Bankr. E.D. La. 2017), *In re Life Care St. Johns, Inc*., Case No. 3:13-bk-4158-JAF (Bankr. M.D. Fla. 2013), *In re Ocala Funding, LLC*, Case No. 3:12-bk-045240-JAF (Bankr. M.D. Fla. 2012), and *In re Taylor Bean & Whitaker Mortgage Corp*., Case No. 3:09-bk-07047-JAF (Bankr. M.D. Fla. 2009).

5.      In connection with and subsequent to its engagement by the Debtors in October of 2020, SOLIC has become familiar with the Debtors' businesses, affairs, assets and contractual arrangements. Accordingly, SOLIC has acquired the necessary background to deal effectively and efficiently with the many financial issues that may arise in the context of the Debtors' chapter 11 cases.

### Services to be Rendered

6.      As per the terms contained in the Agreement, at the request and direction of the Debtors, SOLIC's role will specifically include working with the Debtors' Board and its officers, employees, and professionals with respect to the following:

> a)  Provision of Mr. Luria to serve as the CRO, Mr. Waite Popejoy to serve as the CFO, Mr. Gregory Hagood to serve as the EVP of Strategy, Mr. Robert Annas to serve as the EVP of Operations, Mr. Matthew Caine to serve as the VP of Strategy, and Ms. Mary Dressler as the Director of Strategy.

3

b) The CRO and the CFO will work with the Board and its officers, employees and professionals with respect to the following (the "Restructuring Services"):

i. Management of the "working group" of professionals who are assisting the Debtors in the reorganization process to enhance coordination of their efforts and individual work product consistent with the Debtors' overall restructuring goals;

ii. Providing the Debtors assistance in connection with the development of a rolling 13-week cash flow forecast;

iii. Reviewing the Debtors' current financial position, operation trends, capital needs, financial outlook, standalone viability and market position;

iv. Assisting management in the development of an integrated financial forecast model;

v. Assisting in the preparation of statements of financial affairs, schedules of assets and liabilities, monthly operating reports, disclosure statement analyses, or other financial analyses or reports as may be reasonably necessary in conjunction with such proceedings;

vi. At the request of the Debtors, assisting management and the Debtors' legal counsel in the review of any threatened or unforeseen litigation, contingent liabilities, and regulatory related or submission requirements;

vii. Reviewing the Debtors' budgets and cash flow forecasts;

viii. Communicating and/or negotiating with outside constituents, including creditors and their advisors;

ix. Consideration and identification of potential opportunities for a sale, merger, recapitalization, or reorganization (a "Transaction")[2] of the Debtors or the assets of the Debtors;

x. Advising the Debtors concerning opportunities for a Transaction or Transactions;

---

[2] "Transaction" is defined in the Agreement, and includes, without limitation, any transaction or series or combination of transactions, whereby, directly or indirectly, control of, or a material interest in, the Debtors or any of their businesses or any of their respective assets (including, without limitation, the sale of real estate, equipment, medical supplies, pharmaceuticals, accounts receivable, or contractual agreements to one or more third parties), is transferred for consideration, including, without limitation, a sale or exchange of capital stock or assets, a lease of assets with or without a purchase option, a merger or consolidation, a tender or exchange offer, a restructuring, a recapitalization, a repurchase of capital stock, an extraordinary dividend or distribution, the formation of a joint venture, strategic affiliation or partnership, or any similar transaction.

4

xi.    Participating with the Debtors' counsel on the Debtors' behalf in negotiations concerning a Transaction or Transactions; and

xii.   Providing oversight and management of the post-sale and post-bankruptcy wind-down and orderly liquidation of the Debtors' remaining assets and liabilities through a Plan of Liquidation or otherwise. Following the closing of a Transaction, such wind-down activities may include: monitoring of the Debtors' compliance with all post-closing obligations, assisting in development and maintenance of wind-down budgets, monitoring the resolution of employee-related liabilities (accrued payroll, severance retirement benefits and termination of associated retirement plans or medical plans), negotiation and settlement of direct claims impacting the debtors.

c)  The EVP of Strategy, the VP of Strategy, and the Director of Strategy will work with the Board and its officers, employees, and professionals to provide the Transactional Services described in the Agreement.

d)  Given the dynamic state of the Debtors' affairs, SOLIC will supplement the Interim Officers from time to time, as deemed necessary by the CRO to provide the services described in the Agreement. The work of individuals other than the CRO, the CFO, the EVP Strategy, the VP of Strategy, and the Director of Strategy will be deemed to be "Supplemental Support Services". The Supplemental Support Services shall also include any operational assistance or other services provided by Robert Annas, bankruptcy administrative services provided by SOLIC professionals other than the Interim Officers, human resources assistance by Meg Finnegan, information technology assistance, and/or litigation support or other forensic investigatory work undertaken by SOLIC professionals at the direction of counsel.

### Compensation

7.    As described in the Agreement, the Debtors request that SOLIC be compensated as follows for its services during the course of the Debtors' chapter 11 cases:

a)  As compensation for the Restructuring Services and Transaction Services, SOLIC will be paid a monthly fee (the "Monthly Fee") of $275,000 for the first two months following execution of the Agreement, $250,000 for the next two months, and $225,000 per month thereafter, payable in advance in immediately available funds (via the wire instructions set forth on Exhibit A to the Agreement), with the Monthly Fee payments payable on each monthly anniversary of the execution of the Agreement thereafter or the next business day if such day falls on a weekend or holiday.

b)  As compensation for the Supplemental Support Services, SOLIC will be paid on an hourly basis the respective SOLIC professional's standard hourly rate (the "Hourly Fees") as set forth in the table below, which fees will be subject to periodic adjustment upon notice to the Debtors to reflect economic and other conditions:

5

| | |
|---|---|
| • Senior Managing Directors/Senior Advisors | $725-995/hr |
| • Managing Directors | $695-825/hr |
| • Directors | $550-695/hr |
| • Vice President | $450-550/hr |
| • Senior Associate | $350-450/hr |
| • Associates / Analysts | $245-350/hr |
| • Paraprofessionals | $95-175/hr |

    c) In addition to the Monthly Fees and the Hourly Fees, in the event of a Transaction, the Debtors agree to pay SOLIC a single "Deferred Restructuring Fee" in the amount of $500,000 upon the close or other consummation of such Transaction.

8.     As of the Petition Date, the amount of the Retainer was approximately $100,000 . As set forth in the Agreement, any unused Retainer shall be applied to the final invoice or returned at the termination of SOLIC's engagement.

9.     The Debtors also agreed to reimburse SOLIC for expenses incurred in providing services to the Debtors, including out-of-pocket travel-related expenses, costs of document production and fax transmissions, teleconferencing charges, legal fees, and other expenses (including fee application expenses, discovery costs, and defense costs; provided that SOLIC shall not seek reimbursement of any expense arising from the defense of any of SOLIC's fee applications in these bankruptcy cases).

10.     I submit that the above-described compensation structure is reasonable given the nature of the services described in the Application and the Agreement.

11.     To the best of my knowledge, (a) no commitments have been made or received by SOLIC with respect to compensation or payment in connection with the Debtors' chapter 11 cases other than in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and (b) SOLIC has no agreement with any other entity to share with such entity any compensation received by SOLIC in connection with the Debtors' chapter 11 cases.

10141125-6

12.     The terms of the Agreement, including the compensation, expense reimbursement, and indemnification and limitation of liability provisions, are similar to the terms agreed to by SOLIC and its other clients, both inside and outside of bankruptcy. The terms and conditions of the Agreement were negotiated between the Debtors and SOLIC and reflect the parties' mutual agreement as to the substantial efforts and protection of rights that will be required in this engagement.

<u>**No Material Adverse Interest**</u>

13.     In connection with the preparation of this Declaration, SOLIC searched its client database to determine whether SOLIC had any relationships with the following entities and persons, as identified by the Debtors and/or the Debtors' records known or made available to SOLIC (collectively, the "<u>Interested Parties</u>"):

     a.  The Debtors;

     b.  The Debtors' current members, directors and officers;

     c.  The Debtors' creditors and equity interest holders;

     d.  The Debtors' employees; and

     e.  Various other potential parties-in-interest identified by or made known to SOLIC.

14.     SOLIC's review included providing a list of the Interested Parties to certain SOLIC restructuring professionals and conducting a query of such parties in a database containing the names of individuals and entities that are now or in the past have been represented by SOLIC.

15.     SOLIC's connections with the Interested Parties are listed on **<u>Schedule 1</u>** attached hereto. None of the matters identified by SOLIC's search of Interested Parties is related in any way to the Debtors or affiliates of the Debtors.

16.     As part of its practice, SOLIC appears in numerous cases and proceedings and participates in transactions that involve many different professionals, including attorneys, accountants, and financial consultants, some of whom now or in the future may represent claimants or other parties in interest in these chapter 11 cases. SOLIC has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by numerous attorneys and law firms, some of which may be or may become involved in these chapter 11 cases. Based on my current knowledge of the Debtors, the professionals involved in these chapter 11 cases, and SOLIC's existing connections: (a) except as described on Schedule 1, there are no known connections between SOLIC and the Debtors or any other party in interest in these chapter 11 cases; and (b) none of the connections disclosed on Schedule 1 constitutes an interest materially adverse to the Debtors in matters upon which SOLIC is to be employed.

17.     To the best of my knowledge, SOLIC is not and never has been a "creditor" of any of the Debtors within the meaning of section 101(10) of the Bankruptcy Code. Further, none of myself, any member of the SOLIC team serving the Debtors, or any investment affiliate of SOLIC is a holder of any of the Debtors' debt or equity securities.

18.     To the best of my knowledge, no employee of SOLIC is a relative of, or has been connected with, any judge of the Bankruptcy Court for this district, the Office of the United States Trustee in this district, or any employee of the Office of the United States Trustee in this district.

19.     To the best of my knowledge, neither SOLIC nor any of its members or employees: (a) are creditors or equity security holders of the Debtors; or (b) have an interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor or any

8

other reason. In addition, to the best of my knowledge, and based upon the results of the relationship search described above and disclosed herein, other than as described herein, SOLIC neither holds nor represents an interest adverse to the Debtors.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 7th day of December, 2020.

_____
Neil F. Luria, Senior Managing Director
SOLIC Capital Advisors, LLC
SOLIC Capital, LLC

9

10141125-6

## Schedule 1

Connections to Interested Parties

1. SOLIC is currently providing services to the Debtors pursuant to the Agreement. Pursuant to the Agreement, certain SOLIC professionals are serving in officer capacities.

2. Charles Sweet, a Director of the Debtors, worked with Mr. Luria at BMJ Medical Management, Inc. in 1998-99 and has in the past and currently serves in the capacity as independent director or another fiduciary role in conjunction with wholly unrelated companies and wholly unrelated matters where SOLIC (or an affiliate thereof) serves or has served as financial advisor and/or investor and/or in which SOLIC professionals have served in officer, director or other fiduciary roles.  Such matters have in the past 10-years have included:

   a. *American Purchasing Services, LLC d/b/a American Medical Depot* ("AMD") – Mr. Sweet is currently serving as an independent director of AMD, an entity wholly unrelated to the Debtors and in which SOLIC AMD Investco, an investment affiliate of SOLIC, holds equity and debt interests. Edward R. Casas, a SOLIC professional, was previously a Director of AMD. This matter is wholly unrelated to the Debtors.

   b. *Eagle Telemed Holdings, LLC* ("Eagle") – Mr. Sweet is currently serving as an independent director of Eagle. SOLIC Capital Partners, L.P. ("SCP") and SC Eagle, LLC, are investment affiliates of SOLIC that hold equity interests in Eagle. Mr. Luria currently serves as a Director of Eagle. This matter is wholly unrelated to the Debtors.

   c. *Mission Healthcare, Inc.* ("Mission") – Mr. Sweet previously served as an independent director of Mission, an entity in which MH Funding, LLC, a subsidiary of SCP, held equity and debt interests.  This matter concluded in April 2019. This matter is wholly unrelated to the Debtors.

   d. *Ocala Funding, LLC* ("Ocala") – Mr. Sweet served as a Manager of Ocala until July 2013.  Mr. Luria served as the Chief Restructuring Officer of Ocala and currently serves as the Trustee of a trust that took possession of certain Ocala assets as a result of Ocala's chapter 11 plan. These matters are wholly unrelated to the Debtors.

   e. *SLT Holdco* ("SLT") – Mr. Sweet served as an independent director of SLT until November 2020, including through the course of SLT's chapter 11 bankruptcy case.  SOLIC served as financial advisor to SLT prior to and during SLT's chapter 11 bankruptcy case, and a SOLIC professional currently serves as Trustee to a liquidating trust that took possession of certain assets of SLT as a result of SLT's chapter 11 plan. These matters are wholly unrelated to the Debtors.

     f.   *Cenegenics LLC* ("Cenegenics") – Mr. Sweet was as an independent director of Cenegenics until February 2020. SOLIC provided financial advisory services to Cenegenics. This matter has concluded and was wholly unrelated to the Debtors.

     g.   *The Budd Company* ("Budd") – Mr. Sweet served as an independent director of Budd until 2016. SOLIC provided financial advisory services to a Committee of Executive & Administrative Retirees of Budd that was established under section 1114 of the Bankruptcy Code in Budd's chapter 11 bankruptcy case. This matter has concluded and was wholly unrelated to the Debtors.

3.   Berger Singerman LLP ("BSLLP"), counsel to the Debtors, has represented SOLIC professionals, SOLIC, and certain of SOLIC's affiliates and investment entities in matters wholly unrelated to the Debtors. Mr. Luria and other SOLIC professionals are personal friends with Paul Singerman, Esq. and other attorneys at BSLLP. Mr. Luria and other SOLIC professionals have worked on a number of matters with Mr. Singerman and other BSLLP attorneys. SOLIC has endeavored to list the most significant of those matters, but there may be smaller matters that have been inadvertently omitted:

     a.   *Taylor Bean & Whitaker Mortgage Corp.* ("TBW") – Mr. Luria served as Chief Restructuring Officer of TBW during its chapter 11 case and currently serves as trustee of the TBW Plan Trust that formed upon the confirmation of TBW's chapter 11 plan. Other current SOLIC professionals (both while at SOLIC and their prior firm, Navigant Capital Advisors, LLC) also served in various fiduciary and non-fiduciary roles in connection with TBW and the TBW Plan Trust. BSLLP represented the TBW Official Committee of Unsecured Creditors and, upon confirmation of TBW Plan of Liquidation, BSLLP became general counsel to the TBW Plan Trust. Ocala, an affiliate of TBW, commenced its own chapter 11 case. During this case, Mr. Luria served as Ocala's Chief Restructuring Officer and BSLLP served as special litigation counsel to Ocala. Upon confirmation of Ocala's chapter 11 plan, Mr. Luria was appointed trustee to the Ocala Funding Litigation Trust, of which BSLLP has served as special litigation counsel. TBW, Ocala, and related matters all are wholly unrelated to the Debtors.

     b.   *Meridian Surgical Partners, LLC* ("Meridian") – SOLIC served as financial advisor to Meridian, and Mr. Luria currently serves as the Liquidating Trustee winding down Meridian's assets out-of-court. BSSLP represented Meridian as transactional counsel until such representation concluded in in 2017. These matters are wholly unrelated to the Debtors.

     c.   *AMD* – SOLIC served as financial advisor to AMD from 2018 through early 2020. In connection with refinancing certain of AMD's financial obligations, SCP obtained equity and debt interests in AMD. Edward R. Casas, a SOLIC professional, was previously on the board of AMD. BSLLP has in the past and is currently counsel to AMD. AMD and these matters are wholly unrelated to the Debtors.

2

d. *Eagle* - SCP and SC Eagle, LLC are investment affiliates of SOLIC that hold equity interests in Eagle. Mr. Luria currently serves as a Director of Eagle. SOLIC provids financial advisory services to Eagle. BSLLP previously represented Eagle in connection with certain transactional matters. Such representation concluded in 2019.  These matters all are wholly unrelated to the Debtors.

e. *Sagecrest Vegas, LLC* – SOLIC professionals (while at SOLIC and their prior firm) served in various fiduciary and financial advisory capacities to Sagecrest Vegas, LLC and its affiliates. Sagecrest Vegas, LLC was represented by BSLLP in connection with transaction matters and such representation was concluded in 2015.  These matters were wholly unrelated to the Debtors.

f. *Mission* - MH Funding, LLC, a subsidiary of SCP, previously held equity and debt interests in Mission. BSLLP was retained by affiliates of SOLIC, SCP, SOLIC Capital Management LLC, and SOLIC affiliate MH Funding, LLC in connection with a debt financing provided to Mission. This matter concluded in 2017 and was wholly unrelated to the Debtors.

g. *Clare Oaks* – In June 2020, BSLLP commenced representation of SOLIC in connection with the Chapter 11 case of *In re Clare Oaks* (Bankr. N.D. Ill.).  This matter has been concluded and was wholly unrelated to the Debtors.

h. *Solar Eclipse Investment Funds* – Mr. Luria serves as court appointed receiver for 22 investment funds in connection with a Florida receivership captioned *Geico Corporation, et al, Plaintiffs, v. Solar Eclipse Investment Fund III, LLC, et al*.  As receiver, Mr. Luria retained BSLLP as counsel and SOLIC as financial advisor. This matter is currently ongoing and is wholly unrelated to the Debtors.

i. In 2017, Edward R. Casas, a SOLIC professional, and his wife, were represented by BSLLP in connection with the purchase of a residence in Florida.  Such matter was wholly unrelated to the Debtors.

j. *BMJ Medical Management, Inc*. ("BMJ") – Mr. Luria served as Executive Vice President and General Counsel and subsequently President of BMJ in 1998-99, including at the time that BMJ commenced a chapter 11 case. During BMJ's chapter 11 case, certain current SOLIC professionals (then working for prior firm) provided financial advisory services to BMJ. BSLLP represented a party adverse to BMJ in a litigation matter. These matters were wholly unrelated to the Debtors.

4. SOLIC previously provided financial advisory services to a dental service provider whose equity was held in part by a private equity fund affiliated with the Debtors' senior secured lender NHTV ULM Holdings LLC.  Such matter is concluded and was wholly unrelated to the Debtors.

10141125-6

## EXHIBIT B
### (Agreement)



SOLIC Capital Advisors, LLC
425 W. New England Avenue
Suite 300
Winter Park, FL 32789

November 10, 2020

**PERSONAL AND CONFIDENTIAL**

Unipharma, LLC
10200 NW 67th Street
Tamarac, FL  33321
Attn:  Chairman of the Board

Tamarac 10200, LLC
10200 NW 67th Street
Tamarac, FL  33321
Attn:  Manager

Re:    Engagement of SOLIC Capital Advisors, LLC and SOLIC Capital, LLC

Gentlemen:

We are pleased to confirm the understanding and agreement (this "Engagement Letter" or this "Agreement") between Unipharma, LLC ("Unipharma") and Tamarac 10200, LLC (collectively, the "Company"), on the one hand, and SOLIC Capital Advisors, LLC ("SCA") and SOLIC Capital, LLC ("SC", and together with SOLIC, "SOLIC")[1], on the other hand, as further described herein.  This Agreement outlines the understanding between SOLIC and the Company for the engagement of SOLIC to perform certain services to the Company in connection with its financial and operational restructuring as described herein.  This Agreement is intended to amended and restate and supersede that certain engagement letter (the "Original Agreement") entered into as of October 18, 2020, by and among SCA, the Company and Berger Singerman LLP, the Company's counsel ("Berger Singerman").

SOLIC understands that a bankruptcy filing by the Company may be imminent.  Under the terms of this engagement Letter, SOLIC and the CRO (as defined below) will act under the authority of the Company's Board of Directors (the "Board") granted on the date hereof to coordinate, oversee, and direct the resources necessary to support the Company's restructuring initiatives.  SOLIC will work in consultation and coordination with the Company and Berger Singerman to ensure effective strategy formulation and decision-making.

We understand that NHTV ULM Holdings, LLC (the "Lender") is Unipharma's senior secured lender under that certain Loan Agreement, dated as of September 28, 2018 (referred to herein as the same may further be amended, modified and/or supplemented, as the "Credit Agreement") among the Lender, Unipharma, as borrower, Tamarac, as guarantor, and certain members of Unipharma and Tamarac as pledgors.

---

[1] Securities offerings and other related services provided hereunder to be provided by SOLIC Capital, LLC, member FINRA/SIPC.

Unipharma, LLC
Tamarac 10200, LLC
November 10, 2020
Page 2

1.    Scope of Services.

Pursuant to this engagement (this "Engagement"), SOLIC will provide Neil F. Luria to serve as Chief Restructuring Officer of the Company (the "CRO"), S. Waite Popejoy III to serve as Chief Financial Officer (the "CFO"), Gregory Hagood to serve as Executive Vice President of Strategy (the "EVP Strategy"), Robert Annas as Executive Vice President of Operations ("EVP Operations"), Matthew Caine as Vice President of Strategy (the "VP of Strategy") and Mary Dressler as the Director of Strategy (the "Director of Strategy", and together with the CRO, the CFO, the EVP of Strategy, the EVP of Operations and the Vice President of Strategy, the "Interim Officers").

The CRO and the CFO will work with the Board and its officers, employees, and professionals with respect to the following (the "Restructuring Services"):

- Management of the "working group" of professionals who are assisting the Company in the reorganization process to enhance coordination of their efforts and individual work product consistent with the Company's overall restructuring goals;

- Providing the Company assistance in connection with the development of a rolling 13-week cash flow forecast;

- Reviewing the Company's current financial position, operation trends, capital needs, financial outlook, standalone viability and market position;

- Assisting management in the development of an integrated financial forecast model;

- In the event that the Company pursues judicial proceedings to execute any strategic alternative, assist in the preparation of requisite statement of financial affairs, schedules of assets and liabilities, monthly operating reports disclosure statement analyses, or other financial analyses as may be reasonably necessary in conjunction with such proceedings;

- At the request of the Company, assist management and the Company's legal counsel in the review of any threatened or unforeseen litigation, contingent liabilities, and regulatory related or submission requirements;

- Review of the Company's budgets and cash flow forecasts;

- Communication and/or negotiation with outside constituents, including creditors and their advisors;

- Consideration and identification of potential opportunities for a sale, merger, recapitalization or reorganization (a "Transaction" as further defined below) of the Company or the assets of the Company thereof);

Tamarac 10200, LLC
November 10, 2020
Page 3

- Advising the Company concerning opportunities for a Transaction or Transactions (as defined below);

- Participating on LHH's behalf in negotiations concerning a Transaction or Transactions.   For purposes of this Agreement, a "Transaction" shall mean any transaction or series or combination of transactions, whereby, directly or indirectly, control of, or a material interest in, the Company or any of its businesses or any of their respective assets (including, without limitation, the sale of real estate, equipment, medical supplies, pharmaceuticals, accounts receivable, or contractual agreements to one or more third parties), is transferred for consideration, including, without limitation, a sale or exchange of capital stock or assets, a lease of assets with or without a purchase option, a merger or consolidation, a tender or exchange offer, a restructuring, a recapitalization, a repurchase of capital stock, an extraordinary dividend or distribution, the formation of a joint venture, strategic affiliation or partnership, or any similar transaction. Furthermore, a Transaction will also include confirmation of a plan of liquidation, plan of reorganization, or a consensual UCC-9 foreclosure sale.

- As applicable, pursuant to any in-court restructuring and legacy estate of the Company, provide oversight and management of the post-sale and post-bankruptcy wind-down and orderly liquidation of the Company's remaining assets and liabilities through a Plan of Liquidation or otherwise.  Following the closing of a Transaction, such wind-down activities would include: monitoring of the Company's compliance with all post-closing obligations, assistance in development and maintenance of wind-down budgets, monitoring the resolution of employee-related liabilities (accrued payroll, severance retirement benefits and termination of associated retirement plans or medical plans), negotiation and settlement of direct claims impacting the debtor; and

In addition, the EVP of Strategy, the VP of Strategy and the Director of Strategy will work with the Board and its officers, employees, and professionals to provide the Company the following services (the "Transactional Services"):

- Preparation for and coordination of contemplated Section 363 asset disposition(s) aligned with the Company's overall restructuring objectives.  Such activities will include:

    (i)     Facilitating a competitive solicitation process for a Transaction or Transactions;
    (ii)    Developing marketing strategies to effect a Transaction or Transactions;
    (iii)   Identification and qualification of prospective acquirers;
    (iv)    Preparing solicitation materials including an electronic data-room to facilitate the solicitation of potential acquirers;
    (v)     Solicitation of prospective acquirers and negotiating terms of a Transaction including:
            a.   Negotiation of confidentiality agreements,
            b.   Distribution of solicitation materials,
            c.   Coordinating due diligence to expedite process,
            d.   Facilitating discussions with management and site visits, and
            e.   Assistance in negotiating definitive purchase agreements and supporting schedules;

Unipharma, LLC
Tamarac 10200, LLC
November 10, 2020
Page 4

      (vi)   Support management in addressing all closing conditions including:

           a.  Bankruptcy Court (as defined below) approval;

           b.  Assistance with consents, contract assignment and licensure transfer;

           c.  Assistance with any regulatory approvals;

In addition, given the dynamic state of the Company's affairs, SOLIC will supplement the Interim Officers from time to time, as deemed necessary by the Oversight Professional and the CRO in order to provide the services hereunder; provided the work of individuals other than the CRO, the CFO, the EVP Strategy, the VP of Strategy, and the Director of Strategy will be deemed to be "Supplemental Support Services" hereunder. The Supplemental Support Services shall also include any operational assistance or other services provided by Robert Annas, bankruptcy administrative services provided by SOLIC professionals other than the Interim Officers, human resources assistance by Meg Finnegan, information technology assistance or litigation support or other forensic investigatory work undertaken by SOLIC professionals at the direction of counsel.

The SOLIC team will be led by Neil F. Luria, a SOLIC Senior Managing Director, who will have oversight responsibilities (the "Oversight Professional") and will be staffed as determined by the Oversight Professional from time to time. SOLIC will, subject to the approval of the United States Bankruptcy Court (the "Bankruptcy Court") pursuant to Section 363 of the United Stakes Bankruptcy Code (the "Bankruptcy Code") or otherwise, continue to provide the services of the Interim Officers and SOLC will continue to provide the services described above.

SOLIC and the Interim Officers shall work collaboratively with the management team of the Company. The CRO shall serve as the "responsible person" for the Company in conjunction with any Chapter 11 Bankruptcy commenced by the Company.

Notwithstanding the foregoing, SOLIC and the Interim Officers will not be responsible for overseeing or have any liability associated therewith the sales, production or delivery of pharmaceutical, nutraceutical, or other products by the Company and related to quality control or regulatory compliance matters related thereto.

In view of the Company's precarious present circumstances, the Company acknowledges that the Interim Officers may be required to make decisions with respect to extraordinary measures quickly and the depth of analysis of information on which such decisions will be based may be limited in some respects due to the availability of information, time constraints and other facts.

SOLIC 's ability to perform this Agreement, including the formation of a consensual capital restructuring to be negotiated among the parties as provided herein, will depend upon the extent of cooperation that it receives from the Company, and the Company's advisors and representatives, including its legal counsel and accountants. In this regard, the Company agrees to provide SOLIC full cooperation and access to financial, business and other information concerning the Company which SOLIC reasonably deems appropriate. In addition to open access to all such information (including documents and financial records for projections), SOLIC will have full use and access to all work performed by prior investment banking advisors and management consultants, as well as outside accounting and analyst reports and work papers, all valuation analyses, due diligence materials and other related materials which are (or could be) available to the Company, if any (all such information and materials, documents and records, being referred to as

Tamarac 10200, LLC
November 10, 2020
Page 5

"Company Information"). The Company will also provide SOLIC with full access to the Company's officers, directors, employees, advisors (including to the extent such access will not impair any applicable legal privilege, the Company's counsel) and representatives. SOLIC agrees that, except as may otherwise be required by law, SOLIC will keep confidential and not disclose to third parties (other than representatives or independent contractors retained by SOLIC) all Company Information that is confidential or proprietary to the Company and that SOLIC will use the same only in the performance of its duties under this Agreement.

SOLIC will periodically discuss with the Company, its advisors and directors, the business conclusions and restructuring recommendations resulting from the investigation and negotiations. SOLIC will also discuss its business conclusions and restructuring recommendations with the Agent and the Lenders, from time to time, as they may request.

SOLIC will begin this Engagement immediately upon (i) receipt of this executed Engagement Letter and the attached Indemnity Agreement, (ii) receipt of the first Monthly Fee (defined below) payment, (iii) receipt of the Retainer (as defined below) payment described below, (iii) payment of any amounts owed to SOLIC for services prior to and through execution hereof pursuant to the Original Agreement, and (iv) the inclusion of the Interim Officers as named insureds on the Company's D&O insurance policy (which form of insurance policy must be acceptable to SOLIC or another policy must be provided as described below).

2.    Fees and Expenses.

As compensation for the Restructuring Services and Transaction Services described in Section 1 above, SOLIC will be paid a monthly fee (the "Monthly Fee") as follows: $275,000 per month for the first two months following execution hereof, $250,000 for the next two months, and $225,000 per month thereafter. In each case, each such payment will be in advance in immediately available funds (via the wire instructions set forth on Exhibit A attached hereto) with the first Monthly Fee payable upon execution hereof with subsequent Monthly Fee payments payable on each monthly anniversary of the execution hereof thereafter or the next business day if such day follows on a weekend or holiday.

With respect to any Supplemental Support Services provided by SOLIC professionals hereunder, SOLIC shall be compensated on an hourly basis at the respective SOLIC professionals' standard hourly rates (the "Hourly Fees") as set forth in the table below, which fees will be subject to periodic adjustment upon notice to the Company to reflect economic and other conditions.

Base Hourly Rates:

|  | Range |
|---|---|
| Senior Managing Directors / Seniors Advisors | $725-995/hr |
| Managing Directors | $695-825/hr |
| Directors | $550-695/hr |
| Vice President | $450-550/hr |
| Senior Associate | $350-450/hr |
| Associate / Analyst | $245-350/hr |
| Paraprofessionals | $95-175/hr |

Unipharma, LLC
Tamarac 10200, LLC
November 10, 2020
Page 6

In addition to the Monthly Fees and the Hourly Fees described above, in the event of a Transaction, the Company agrees to pay to SOLIC a "Deferred Restructuring Fee" equal to $500,000 upon the closing or other consummation of such Transaction.

The Company agrees to pay SOLIC's reasonably incurred fees and expenses[2] in connection with this Agreement based upon the rates set forth above. The Company will pay to SOLIC upon execution of this Agreement an advance retainer in the amount of $100,000 (per the instructions set forth in "Exhibit A" attached hereto) (the "Retainer") or otherwise replenish the currently existing retainer provided upon execution of the Original Agreement to $100,000. SOLIC will apply the Retainer to each invoice rendered by SOLIC. The Company will pay SOLIC any balance due upon receipt of SOLIC's invoice each month and will replenish the Retainer with SOLIC each month in the amount of all payments made to SOLIC from the Retainer.

SOLIC will provide the Company with reasonably detailed weekly (or otherwise at SOLIC's discretion) invoices for the Hourly Fees and expenses and such invoices will be due upon receipt and payable, as set forth below, within three (3) days of receipt (at which point they will be charged against the Retainer and if the Retainer is not sufficient to cover such invoices, the Company will immediately wire the deficiency plus the amount necessary to replenish the Retainer. If the Company fails to comply with its obligations under this paragraph, then SOLIC shall have the right to cease work until the Company does so comply without incurring any liability whatsoever.

SOLIC's expenses as incurred will be invoiced separately. Generally, these expenses include any travel-related expenses, document production, fax transmissions, teleconferencing charges, outside legal expenses incurred by SOLIC associated with this Agreement (including fee application expenses, discovery costs and defense costs), and other expenses of this type which are associated with this Agreement. All professional fees and expenses will be paid and reimbursed via wire transfer (per instructions set forth on "Exhibit A" attached hereto) within three (3) days of receipt of the applicable SOLIC invoices by the Company (at which point they will be charged against the Retainer and if the Retainer is not sufficient to cover such invoices, the Company will immediately wire the deficiency plus the amount necessary to replenish the Retainer as described above.

In the event of a bankruptcy filing by the Company, the Company agrees that it will seek to negotiate with the Agent and any participating lenders for such lenders to provide a carve-out of their collateral in the context of a debtor-in-possession financing (the "DIP Facility") and any cash collateral agreements (the "Cash Collateral Agreement"), in an amount equal to the sum of (i) any of SOLIC's unpaid fees and expenses outstanding at the time of a default or event of default under the terms of such DIP Facility or Cash Collateral Agreement including any Deferred Restructuring Fee otherwise payable plus (ii) SOLIC's fees and expenses accrued post-default or event of default (up to an agreed upon limit for such post-default period) plus any Deferred Restructuring Fee otherwise payable in connection with a Transaction closing post-default or event of default).

———————————————

Tamarac 10200, LLC
November 10, 2020
Page 7

3.    Miscellaneous.

a.    **Indemnification and Limitation of Liability.** SOLIC will act under this Agreement as an independent contractor with duties solely to the Company. Because we will be acting on your behalf in this capacity, it is our practice to receive indemnification. A copy of our standard indemnity form is attached hereto as "Exhibit B" ("Indemnity Agreement") and must be executed concurrently with this Agreement. The terms of the Indemnity Agreement are incorporated by reference into this Agreement. Notwithstanding the terms of any other provision, the total liability of SOLIC, its parent, subsidiaries, officers, members, employees, and agents for all claims of any kind arising out of this Agreement, whether in contract, tort or otherwise, shall be limited to the total fees paid to SOLIC on this Agreement except to the extent that any losses associated with any such claims are finally judicially determined to have resulted solely from the willful misconduct or gross negligence of SOLIC. None of the parties hereto shall in any event be liable for any indirect, consequential or punitive damages, even if they have been advised of the possibility of such damages. SOLIC shall not be liable for any loss or destruction of valuable documents provided to SOLIC and the Company shall be responsible for insuring such documents against loss or destruction. No action, regardless of form, arising out of or relating to this Agreement, may be brought by the Company more than one (1) year after the cause of action has accrued. All obligations of the Company herein are intended to be joint and several amongst Unipharma and Tamarac. Notwithstanding anything contained herein to the contrary, the provisions of the indemnity agreement executed at the time of the Original Agreement shall remain in full force and effect with respect to any events occurring prior to execution hereof.

b.    **Confidentiality.** Any advice or opinions provided by SOLIC may not be disclosed or referred to publicly or to any third party except as expressly set forth herein or otherwise in accordance with SOLIC's prior written consent. It is further understood that any advice rendered by SOLIC pursuant to this Agreement, including any advice rendered during the course of participating in negotiations and meetings with management or the Board, as well as any written materials provided by SOLIC, are intended solely for the benefit and confidential use of the Company and the Board and may not be relied upon by third parties without prior written consent of SOLIC, and will not be reproduced, summarized, described or referred to or given to any other person for any purpose without SOLIC's prior written consent.

c.    **Company Information.** The Company acknowledges and agrees that, in rendering its services hereunder, SOLIC will be using and relying on the Company Information (and information available from public sources and other sources deemed reliable by SOLIC) without independent verification thereof or independent appraisal or evaluation of the Company, or any other party. The Company represents and warrants that all Company Information made available to SOLIC will be complete and correct and that any projections, forecasts or other Company Information provided by the Company to SOLIC will have been prepared in good faith and will be based upon reasonable assumptions. The Company agrees to promptly notify SOLIC if the Company believes that any Company Information which was previously provided to SOLIC has become materially

Unipharma, LLC
Tamarac 10200, LLC
November 10, 2020
Page 8

misleading. SOLIC does not assume responsibility for the accuracy or completeness of the Company Information or any other information regarding the Company. SOLIC will have no obligation to update any report(s) that it may produce or to revise the information contained therein because of events and transactions occurring subsequent thereto.

d.    **Role of SOLIC.**  The Company acknowledges and agrees that (i)  SOLIC is not being retained to advise the Company on, or to express any opinion as to, the wisdom, desirability or prudence of consummating a recapitalization, restructuring, reorganization or other transaction, (ii) SOLIC (as opposed to the Interim Officers) is not and will not be construed as a fiduciary of the Company or any affiliate thereof and will have no duties or liabilities to the equity holders or creditors of the Company, any affiliate of the Company or any other person by virtue of this Agreement and the retention of SOLIC hereunder, all of which duties and liabilities are hereby expressly waived, and (iii) any advice rendered by SOLIC does not constitute a recommendation to any equity holder or creditor that such equity holder or creditor might or should take in connection with a possible recapitalization, restructuring, reorganization or other transaction. Neither equity holders nor creditors of the Company are intended beneficiaries hereunder.   The Company confirms that it will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other similar advice. SOLIC will not be auditing any financial statements or performing any attest procedures in the course of this engagement. SOLIC's services are not designed, nor should they be relied upon, to disclose internal weaknesses in internal controls, financial statement errors, irregularities, illegal acts or disclosure deficiencies. SOLIC is not a professional accounting firm or law firm and does not practice accounting or law.

e.    **Governing Law, Venue, Waiver of Jury Trial.**  The terms of this Agreement shall be construed, interpreted and applied in accordance with the laws of the State of Florida applicable to contracts entered into and wholly to be performed in Florida by Florida residents.   The Company irrevocably submits to the jurisdiction of the United States District Court of the Southern District  of Florida (or the Bankruptcy Court in the event of a bankruptcy filing) for the purpose of any suit, action or other proceeding arising out of this Agreement which is brought by or against the Company.  Each of the Company (and, to the extent permitted by law, on behalf of the Company's equity holders and creditors) and SOLIC hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with this Agreement.

f.    **Assignment and Amendments.** The Company agrees that it will not enter into an agreement with respect to a possible transaction involving a recapitalization, restructuring, reorganization or other transaction, including a transaction involving a sale of all or substantially all of the Company's assets or operations, unless such agreement expressly provides for the all necessary provision to assure payment to SOLIC under this Agreement and the Indemnity Agreement. SOLIC may assign its rights hereunder to any of its affiliates, subsidiaries or assigns. This Agreement may only be modified, amended, or waived by a writing signed by the parties hereto. This Agreement, and any modification

Tamarac 10200, LLC
November 10, 2020
Page 9

or amendment thereto, may be executed in counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument.

g.  **Attendance at Closing.** SOLIC reserves the right to attend the closing of any transaction involving the sale of all or a part of the Company's assets or any other recapitalization, restructuring, reorganization, merger or other transaction and issue a tombstone announcement with respect to such transaction and SOLIC's involvement with the Company.

h.  **Termination.** Either the Company or SOLIC may terminate this Agreement upon ten (10) days written notice, provided however that (i) all fees and expenses reimbursement due through the effective date of termination will be paid within three (3) days of the effective date of termination and the Retainer will be deemed earned, (ii) no termination of this Agreement will affect SOLIC's right to payment of fees or expense reimbursement pursuant to Section 2 hereof or the indemnification contemplated by the Indemnity Agreement, (iii) the terms of Section 3 hereof will survive termination of this Agreement, and (iv) SOLIC shall be entitled to receive any Deferred Restructuring Fee it would have otherwise been entitled to in connection with the closing or other effectiveness of a Transaction occurring within 12 months of termination that would have triggered the payment of a Deferred Restructuring Fee. Notwithstanding anything contained herein to the contrary, SOLIC may terminate this Agreement at anytime in the event that SOLIC determines, in its sole discretion, that the Company does not have sufficient cash or financing available to fund any accrued but unpaid payroll, payroll taxes or other trust fund taxes of the Company.

i.  **Notices.** All notices required or permitted to be delivered under this Agreement shall be sent, if to us, to the address of SOLIC's Winter Park, Florida office as set forth at the head of this letter, to the attention of Mr. Edward R. Casas and Mr. Neil F. Luria, and if to you, to the address for you set forth above, to the attention of your Chief Executive Officer, or to such other name or address as may be given in writing to the other party. All notices under this Agreement shall be sufficient if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.

j.  **Employment Issues.** The Company agrees that during the term of this Agreement (including any renewals or extensions thereof), and for a period of one year thereafter ("Restriction Period"), the Company will not knowingly employ or engage as an independent contractor, consultant or otherwise any person who is or was an employee or independent contractor of SOLIC during the term of this Agreement. If this restriction is violated, the Company agrees that it will be subject to all remedies available to SOLIC in law or in equity, and the Company and SOLIC further agree that if the Company violates the restriction in this paragraph, it will cause SOLIC to suffer substantial economic injury that may be difficult and time-consuming to calculate with exactitude and, therefore, the Company agrees that the sum of one-million dollars ($1,000,000) shall be the reasonable amount of liquidated damages to which SOLIC will be entitled as fair payment for the consequences of the Company's breach. Furthermore, the Company acknowledges that SOLIC's remedies at law may be inadequate to protect against breach of the provisions

Unipharma, LLC
Tamarac 10200, LLC
November 10, 2020
Page 10

contained in this paragraph and therefore the Company hereby consents to SOLIC seeking immediate injunctive relief by a court of appropriate jurisdiction to enjoin any breach or any threatened breach of this paragraph.

k.   **Insurance.** To the extent that any SOLIC professional serves as a fiduciary of the Company then such individuals will be entitled to the benefit of the most favorable indemnities provided by the Company to its officers and directors, whether under the Company's by-laws, certificates of incorporation, by contract or otherwise. The Company agrees that it will use its best efforts to specifically include and cover any such individuals under the Company's liability policy for directors' and officers' insurance which policy must be reasonably satisfactory to SOLIC. In the event that the Company (i) is unable to include SOLIC and such individuals under the Company's policy, or (ii) does not maintain first dollar liability coverage, in effect for at least $10 million, it is agreed that SOLIC may in its discretion attempt to purchase a separate directors' and officers' policy or other such insurance policy that will cover such SOLIC employees and representatives serving as fiduciaries to the Company and that the cost of same shall be invoiced to the Company and reimbursed by the Company as an out-of-pocket cash expense. If SOLIC is unable to purchase such insurance, then SOLIC reserves the right to terminate this agreement.

l.   **Bankruptcy, Retention.** In the event the Company determines it is necessary to file for protection as a debtor in a case under the U.S. Bankruptcy Code, the Company agrees that it will promptly apply to the Bankruptcy Court to obtain approval of our retention and Retainer effective on the date of the filing. The Company agrees that in connection with the bankruptcy process, it will reimburse SOLIC for its reasonable attorneys' fees and expenses related to such retention matters, including the filing and preparation of any fee applications and any preparation or attendance at hearings related thereto. Notwithstanding anything to the contrary contained herein, after the Company files for bankruptcy protection, the fees and expenses of SOLIC set forth herein shall be reimbursed and paid in accordance with the Bankruptcy Code and any fee procedures established by order of the Bankruptcy Court.

n.   **Entire Agreement.** This is the entire agreement between the parties pertaining to its subject matter and supersedes all prior agreements, representations and understandings of the parties. No modification of this Agreement shall be binding unless agreed to in writing by the parties. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.

If the terms of the Agreement as set forth in this letter are satisfactory, kindly sign the enclosed copy of this Agreement along with the attached Indemnity Agreement and return executed copies to me by pdf with originals by overnight mail accompanied with a wire transfer in the amount of the Retainer replenishment necessary and any amounts due for services under the Original Agreement.

We look forward to working with you.

Very truly yours,

Tamarac 10200, LLC
November 10, 2020
Page 11

SOLIC CAPITAL ADVISORS, LLC

By:_____

Name:_____

Title:_____

SOLIC CAPITAL, LLC

By:_____

Name:_____

Title:_____

ACCEPTED, ACKNOWLEDGED AND AGREED TO:

UNIPHARMA, LLC

By:_____

Name: Alan Petro

Title: CEO

TAMARAC 10200, LLC

By:_____

Name: Alan Petro

Title: CEO

Unipharma, LLC
Tamarac 10200, LLC
November 10, 2020
Page 12

## EXHIBIT A

### Wiring Instructions

Please direct wire to[3]:

| | |
|---|---|
| Account Name: | SOLIC Capital Advisors, LLC |
| Account Number: | ███████ |
| Bank: | Northern Trust Bank |
| Address: | 50 S. LaSalle Street, Chicago IL 60675 |
| ABA #: | 071000152 |
| SWIFT: | CNORUS44 |

---

[3] Or as otherwise directed by the Oversight Professional.

Tamarac 10200, LLC
November 10, 2020
Page 13

**EXHIBIT B**

November 10, 2020

SOLIC Capital Advisors, LLC
425 West New England Avenue
Suite 300
Winter Park, FL 32789

Ladies and Gentlemen:

This letter will confirm that in connection with the engagement (the "Engagement") of SOLIC Capital Advisors, LLC ("SCA") and SOLIC Capital, LLC ("SC", and together with SCA, "SOLIC") by Unipharma, LLC ("Unipharma") and Tamarac 10200, LLC ("Tamarac", and together with Unipharma, the "Company") as reflected in the Engagement Letter (the "Engagement Letter" dated the date hereof (all capitalized terms used but not otherwise defined herein having meanings described in such Engagement Letter) the Company agrees to indemnify and hold harmless SOLIC and its affiliates and their respective members, officers, directors, employees, independent contractors and agents and each other person, if any, controlling SOLIC or any of its affiliates (each referred to herein as an "Indemnified Person") to the fullest extent permitted by law from and against any losses, claims, damages, obligations, penalties, judgments, awards, costs, disbursements or liabilities, including amounts paid in settlement (collectively, "Losses"), based upon, related to, arising out of or in connection with the Engagement or any recapitalization, restructuring, reorganization, or other transaction involving the Company (a "Restructuring"), and will reimburse each Indemnified Person for all expenses (including fees and expenses of counsel) ("Expenses") as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation, or proceeding related to, arising out of or in connection with the Engagement or any Restructuring, whether or not pending or threatened and whether or not any Indemnified Person is a party. Furthermore, the Company will pay SOLIC at its standard hourly rates for any SOLIC professional time incurred in connection with any action, claim, suit, investigation or proceeding described in the foregoing sentence. Notwithstanding the foregoing, in no event shall the Company be responsible for any Losses or Expenses that arise out of or in connection with the Engagement or any Restructuring, which are finally judicially determined to have resulted solely from the willful misconduct or gross negligence of SOLIC.

If any litigation, investigation or proceeding is commenced as to which SOLIC proposes to demand indemnification, SOLIC will notify the Company with reasonable promptness; provided, however, that any failure by SOLIC to notify the Company will relieve the Company from its obligations hereunder only to the extent the Company has been materially prejudiced by such failure or delay. SOLIC will have the right to retain counsel (and local counsel, if appropriate) of its own choice to represent it, and the Company will pay the fees, expenses and disbursements of such counsel. The Company retains the right to participate in the defense of such litigation, investigation or proceeding as to which SOLIC seeks indemnification through counsel of the Company's choice (the cost of which will be paid by the Company) and SOLIC will reasonably cooperate with such counsel and the Company (including, to the extent possible and consistent with its own interests, keeping the Company reasonably informed of such defense). The Company will be liable for any settlement of any claim against SOLIC made with the Company's written consent, which consent will not be unreasonably withheld.

Unipharma, LLC
Tamarac 10200, LLC
November 10, 2020
Page 14

If, for any reason, the foregoing indemnification is unavailable to any of the Indemnified Parties or is insufficient to hold them harmless in respect of any Losses or Expenses, then the Company will contribute to the amount paid or payable by any of the Indemnified Parties as a result of such Losses and Expenses in such proportion as is appropriate to reflect the relative benefits (or anticipated benefits) to the Company and its stakeholders on the one hand and the Indemnified Parties on the other hand from the possible recapitalization, restructuring, reorganization or other transaction, or if such allocation is not permitted by applicable law, then in such proportion as is appropriate to reflect not only the relative benefits received by the Company and its stakeholders on the one hand and the Indemnified Parties on the other hand, but also the relative fault of the Company, its directors, officers, employees, agents and advisors (other than SOLIC) on the one hand and the Indemnified Parties on the other hand, as well as any other relevant equitable considerations. The relative benefits received (or anticipated to be received) by the Company and its stakeholders on the one hand and by the Indemnified Parties on the other hand will be deemed to be in the same proportion as such benefit bears to the total fees paid to SOLIC pursuant to the Engagement. The relative fault of any party or other person will be determined by reference to such party's or person's knowledge, access to information and opportunity to prevent or correct any misstatement, omission, misconduct or breach of duty. In no event will the amount required to be contributed by the Indemnified Parties hereunder or the liability of the Indemnified Parties pursuant to the Engagement Letter exceed the total amount of fees paid to SOLIC pursuant to the Engagement Letter. The Company and SOLIC agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above.

The reimbursement, indemnity and contribution obligations of the Company hereunder will (i) be in addition to any liability which the Company may otherwise have, (ii) survive the completion or termination of SOLIC's engagement under the Engagement and (iii) shall be binding upon any successors and assigns of the Company. The Indemnified Parties (including any contractors of SOLIC) are deemed third party beneficiaries hereunder. SOLIC may assign its right to reimbursement, indemnity and contribution hereunder, in whole or in part, to any affiliate, assignee or successor entity.

The Company agrees that without the prior written consent of SOLIC, it will not consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claims, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless (i) such settlement, compromise, consent or termination includes an unconditional release of each Indemnified Person from any and all claims and liabilities arising out of such action, claim, suit or proceeding and (ii) there is no statement in connection therewith as to an admission of fault culpability or failure to act by or on behalf of any Indemnified Party.

The provisions of this agreement shall apply to the Engagement and any written modification of the Engagement Letter thereof signed by the parties and shall remain in full force and effect regardless of any termination or the completion of SOLIC's services under the Engagement.

All obligations herein of the Company are intended to be joint and several amongst Unipharma, LLC and Tamarac 10200, LLC

This agreement will be deemed made in Florida. The validity and interpretation of this agreement will be governed by, and construed and enforced in accordance with, the laws of the State of Florida applicable to agreements made and to be fully performed therein (excluding the conflicts of laws rules). The Company

Tamarac 10200, LLC
November 10, 2020
Page 15

irrevocably submits to the jurisdiction of the United States District Court of the Southern District of the Florida for the purpose of any suit, action or other proceeding arising out of this agreement which is brought by or against the Company. Each of the Company (and, to the extent permitted by law, on behalf of the Company's equity holders and creditors) and SOLIC hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with this agreement.

Very truly yours,

UNIPHARMA, LLC

By: _____
    Name: Alan Petro
    Title: CEO

TAMARAC 10200, LLC

By: _____
    Name: Alan Petro
    Title: CEO


Accepted, acknowledged and agreed to:

SOLIC CAPITAL ADVISORS, LLC

By: _____
    Name: Neil Luria
    Title: Senior Managing Director

SOLIC CAPITAL, LLC

By: _____
    Name: Neil Luria
    Title: Senior Managing Director

**EXHIBIT C**
**(Proposed form of Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

TAMARAC 10200, LLC and            Case No. _____
UNIPHARMA, LLC,                   Case No. _____

     Debtors[1].                Chapter 11 Cases
                                  (Joint Administration Pending)

_____/

**INTERIM ORDER GRANTING DEBTORS' APPLICATION, PURSUANT TO
SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE, FOR APPROVAL OF
AGREEMENT WITH SOLIC CAPITAL ADVISORS, LLC AND SOLIC CAPITAL, LLC
TO PROVIDE THE SERVICES OF (I) NEIL F. LURIA AS CHIEF RESTRUCTURING
OFFICER, (II) CERTAIN OTHER INTERIM OFFICERS, AND (III) CERTAIN
SUPPORT PERSONNEL, EFFECTIVE AS OF THE PETITION DATE**

     **THIS MATTER** having come before the Court on December _____, 2020 at _____

a.m./p.m. in Fort Lauderdale, Florida, upon the *Debtors' Application, Pursuant to Sections 105(a)*

*and 363(b) of the Bankruptcy Code, for Approval of Agreement with SOLIC Capital Advisors, LLC*

---

[1] The last four digits of each Debtor's federal tax identification number are Tamarac 10200, LLC (2050) and Unipharma, LLC (8962).  The address of the Debtors is 10200 N.W. 67th Street, Tamarac, FL 33321.

*and SOLIC Capital, LLC to Provide the Services of (I) Neil F. Luria as Chief Restructuring Officer, (II) Certain Other Interim Officers, and (III) Certain Support Personnel, Effective as of the Petition Date* [ECF No. ___] (the "Application") filed on December 6, 2020 by the above-captioned debtors-in-possession (the "Debtors").   The Application seeks entry of an order authorizing the retention of SOLIC Capital Advisors, LLC and SOLIC Capital, LLC (together, "SOLIC") to provide (i) Neil F. Luria ("Luria"), as chief restructuring officer ("CRO") to the Debtors, (ii) S. Waite Popejoy III to serve as Chief Financial Officer (the "CFO"), Gregory Hagood to serve as Executive Vice President of Strategy (the "EVP of Strategy"), Robert Annas as Executive Vice President of Operations (the "EVP of Operations"), Matthew Caine as Vice President of Strategy (the "VP of Strategy"), and Mary Dressler as the Director of Strategy (the "Director of Strategy", and together with the CRO, the CFO, the EVP of Strategy, the EVP of Operations, and the VP of Strategy, the "Interim Officers"); and (iii) the services of certain support personnel, effective as of the Petition Date, upon the terms and conditions set forth in the original Agreement attached as Exhibit B to the Application (the "Agreement").   Upon the Application,[2] the Luria Declaration attached as **Exhibit "A"** to the Application; and it appearing that neither Luria nor SOLIC holds nor represents any interest adverse to the Debtors' estates; and this Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and the Debtors having asserted that venue is proper before this Court pursuant to 28 U.S.C. § 1408; and it appearing that proper and adequate notice of the Application has been given and that no other and further notice is necessary; and the relief requested in the Application being in the best interests of the Debtors and their estates and

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed in the Application.

2

10194650-1

creditors and interest holders; and this Court having reviewed the Application and having heard the arguments in support of the Application at a hearing before this Court (the "Hearing"), and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court and after due deliberation thereon; and good and sufficient cause appearing therefore, it is

ORDERED that:

1.      The Application is **APPROVED**, subject to the terms hereof.

2.      The Debtors are authorized pursuant to 11 U.S.C. §§ 105(a) and 363(b) to retain SOLIC to provide (a) the services of (i) CRO, (ii) CFO, (iii) EVP of Strategy, (iv) EVP of Operations, (v) VP of Strategy, and (vi) Director of Strategy; and (b) the services of certain support personnel effective as of the Petition Date, upon the terms set forth in the Agreement attached as **Exhibit "B"** to the Application, subject to the following terms, which apply notwithstanding anything in the Application or any exhibits related thereto to the contrary:

        a.      SOLIC shall not be retained by the Debtors in any other capacity other than as retained pursuant to section 363 of the Bankruptcy Code (for example, and without limitation, as a financial advisor retained under section 327(a) of the Bankruptcy Code, claims agent/claims administrator, or investor/acquirer) in connection with the above captioned cases.

        b.      In the event the Debtors seek to have SOLIC personnel assume executive officer positions that are different than the positions disclosed in the Application, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new personnel who will serve in the interim officer capacity, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed. Notwithstanding the

3

foregoing, to the extent that SOLIC supplements the Interim Officers with additional SOLIC personnel and there is no associated cost then no modification will be necessary.

   c.  SOLIC shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation.

  3.  Except as otherwise required by this Order, SOLIC will not be subject to any order of this Court governing the procedures for interim compensation for professionals, and the Debtors are authorized to compensate SOLIC in accordance with the terms of the Agreement without further order of the Court.

  4.  The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

  5.  Entry of this Interim Order is without prejudice to the rights of any party-in-interest to interpose an objection to the Application, and any such objection will be considered on a *de novo* standard at the Final Hearing.

  6.  The terms and conditions of this Order shall be immediately effective and enforceable upon its entry and effective as of the Petition Date.

  7.  The Court shall conduct a final hearing (the "Final Hearing") on the Application on **December    , 2020 at       a.m/p.m, United States Courthouse, 299 East Broward Blvd., Room 112, Fort Lauderdale, FL 33301**.

#   #   #

4

Submitted by:
Christopher Andrew Jarvinen, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile:  (305) 714-4340
Email:  cjarvinen@bergersingerman.com

Copies furnished to:
Christopher Andrew Jarvinen, Esq.
*(Attorney Jarvinen is directed to serve a signed copy of this Order upon all interested parties and to file a Certificate of Service with the Court.)*

5