UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

TAMARAC 10200, LLC and                    Case No. _____
UNIPHARMA, LLC,                           Case No. _____

      Debtors[1].                          Chapter 11 Cases
                                          (Joint Administration Pending)

_____/

**DEBTOR'S EMERGENCY MOTION FOR (A) AUTHORITY, ON AN INTERIM
AND FINAL BASIS, TO (I) MAINTAIN BANK ACCOUNTS AND TO CONTINUE
TO USE EXISTING BUSINESS FORMS AND CHECKS, AND (II) CONTINUE TO
USE EXISTING CASH MANAGEMENT SYSTEM, AND (B) WAIVER OF
CERTAIN INVESTMENT AND DEPOSIT GUIDELINES**
**(Emergency Hearing Requested)**

**Statement of Exigent Circumstances**

      The Debtors respectfully request that the Court conduct a hearing on this
Motion within two business days of the Petition Date (as defined herein),
consistent with Local Rule 9013-1(F).  The Debtors maintain a number of bank
accounts.  The United States Trustee Guidelines require the closing of all pre-
petition bank accounts and the establishment of new DIP accounts.  Changing
the Debtors' existing bank accounts and business forms at this critical juncture
in these cases would severely disrupt the Debtors' cash management system and
adversely affect the Debtors' business operations. Section 345 of the
Bankruptcy Code also imposes investment guidelines on debtors.  The Debtors
are also requesting a waiver of the requirements of Section 345.  Additionally,
the Debtors respectfully request that the Court waive the provisions of Local
Rule 9075-1(B), which requires an affirmative statement that a bona fide effort
was made in order to resolve the issues raised in this Motion, as the relief
requested herein is urgent in nature and does not lend itself to advance
resolution.

      Tamarac 10200, LLC ("Tamarac") and Unipharma, LLC ("Unipharma", and together

with Tamarac, collectively, the "Debtors") by and through their proposed undersigned counsel,

seek the entry of orders, on an interim and final basis, (a) authorizing (i) the continued use of the

Debtors' existing Bank Accounts (as defined herein) and continued use of existing Business Forms (as defined herein) and checks, and (ii) the continued use of the existing Cash Management System (as defined herein); (b) waiving investment and deposit guidelines of Section 345 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*., and those guidelines promulgated by the Office of the United States Trustee (the "Guidelines");[2] and (c) providing any additional relief required in order to effectuate the foregoing. In support of this Motion, the Debtors rely upon the *Declaration of Neil F. Luria in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed on the Petition Date (as defined below), and respectfully state as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a), 345(b) and 363(c) of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 9013-1(F) and (J) of the Local Bankruptcy Rules for the Southern District of Florida (the "Local Rules").

---

[1] The last four digits of each Debtor's federal tax identification number are Tamarac 10200, LLC (2050) and Unipharma, LLC (8962). The address of the Debtors is 10200 N.W. 67th Street, Tamarac, FL 33321.
[2] The Guidelines were issued in order to assist the U.S. Trustee in supervising the administration of   chapter 11 cases. Such Guidelines require chapter 11 debtors to, among other things:

    a.      close all existing bank accounts and open new accounts which must be designated debtor-in-possession bank accounts;

    b.      establish and maintain separate debtor-in-possession accounts for the payment of payroll, taxes and operating expenses; and

    c.      obtain and utilize new checks for all debtor-in-possession accounts which bear the designation "Debtor-in-Possession" and contain certain other information related to the chapter 11 case.

**Background**

4.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5.     The Debtors are operating their businesses and managing their affairs as a debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.     For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration.

**Relief Requested**

7.     By this Motion, the Debtors seek the entry of an order substantially in the form attached hereto as **Exhibit "B"**: (a) authorizing (i) the continued use of the Debtors' existing Bank Accounts and continued use of existing Business Forms and checks, (ii) the continued use of the existing Cash Management System; (b) a limited waiver of the investment and deposit guidelines of Section 345 of the Bankruptcy Code and the United States Trustee's Guidelines; and (c) additional relief required in order to effectuate the foregoing.

8.     The relief requested herein will help ensure the Debtors' smooth transition into Chapter 11 and avoid the possible disruptions and distractions that could otherwise divert the Debtors' attention from more pressing matters during the initial days of these Chapter 11 cases.

**The Debtors' Existing Bank Accounts and Cash Management System**

9.     Prior to the commencement of these Chapter 11 cases, and in the ordinary course of their business, the Debtors used a Cash Management System which permits the efficient collection, transfer, and disbursement of funds generated on a daily basis from their operations (the "Cash Management System") comprised of four (4) bank accounts (each a "Bank Account" and collectively, the "Bank Accounts"); two of these accounts are Operating Accounts, one in

10136446-6

3

the name of each of the Debtors (the "<u>Tamarac Operating Account</u>" and "<u>Unipharma Operating</u>

<u>Account</u>").   The third account, held by Unipharma, is used to fund the Unipharma Operating

Account (the "<u>Funding Account</u>").[3] The fourth account was used to provide operating capital to

Unipharma, as needed (the "<u>Advisory Fee Funding Account</u>").[4]

      10.      The Debtors maintain the Tamarac Operating Account and Unipharma

Operating Account at JPMorgan Chase. Unipharma maintains the Funding Account and

<u>Advisory Fee Funding</u> Account at Morgan Stanley Smith Barney ("<u>Morgan Stanley</u>").

      11.      Central to the Cash Management System is financing provided by NHTV that is

utilized by Unipharma to fund its business operations.

      12.      Attached to this Motion as **<u>Exhibit "A"</u>** is an exhibit listing (a) the names of the

pre-petition bank accounts which the Debtors seek to maintain post-petition; (b) the types of

accounts sought to be maintained; (c) the amount on deposit in each of the accounts as of the

date preceding the Petition Date; and (d) whether the depository is an authorized depository

pursuant to 11 U.S.C. § 345(b).   The Debtors respectfully request authority to maintain their

existing Bank Accounts and Cash Management System in accordance with their usual and

customary practices, subject to certain modifications as set forth herein, to ensure a smooth

transition into Chapter 11 with minimal disruption to operations.

      13.      The Debtors' existing Bank Accounts function smoothly and permit the efficient

collections and disbursements of cash for the benefit of the Debtors and all parties in interest.

---

[3] When Unipharma needed funds for operating capital, it provided written notice to NHTV ULM Holdings, LLC ("<u>NHTV</u>"), Unipharma's lender, and monies were wired from the Funding Account to the Unipharma Operating Account. Due to a Deposit Account Control Agreement (DACA) dated as of August 1, 2019, between NHTV and Unipharma, the title of the Funding Account is "NHTV ULM Holdings, LLC Sec Pty FBO Unipharma LLC," however, the existence of the DACA does not change the fact that Unipharma is the beneficial owner or holder of the funds in the Funding Account.

[4] Specifically, the Advisory Fee Funding Account is used to pay advisory fees related to the Funding Account; funds are wired from the Unipharma Operating Account to fund the advisory fees.

10136446-6

The Debtors' transition into Chapter 11 will be significantly less disruptive if the Bank Accounts are maintained following the commencement of these cases with the same account numbers. The Debtors further request authority to deposit funds in and withdraw funds from all such accounts postpetition, subject to the same access rights and limitations existing prior to the Petition Date, including, but not limited to, check, wire, transfers, ACH, electronic funds transfers and other debits and to treat the Bank Accounts for all purposes as debtors in possession accounts.

14.    The Debtors' operations require the Cash Management System to continue during the pendency of the Chapter 11 cases.  If the Debtors were required to create and implement a new cash management system, their operations would be severely disrupted, which would have an adverse impact on the Debtors' ability to undertake the proposed sales process.  Further, the establishment of new cash accounts and a new collection and disbursement system would result in substantial additional costs to the Debtors' bankruptcy estates.  Accordingly, the Debtor submit that the maintenance of the existing Cash Management System is essential and in the best interests of all creditors and other parties in interest.

### Maintenance of the Debtor's Existing Bank Accounts, Cash Management System, Checks, and Business Forms is Warranted

**A.    Waiver of Guidelines.**

15.    By this Motion, the Debtors seek a waiver of certain operating Guidelines established by the Office of the United States Trustee.  For example, the Office of the United States Trustee has established certain operating Guidelines for debtors in possession in order to supervise the administration of Chapter 11 cases.  These Guidelines require Chapter 11 debtors to, among other things, (i) close all existing bank accounts, (ii) open new debtor in possession ("DIP") bank accounts in certain financial institutions designated as authorized depositories by

10136446-6

the U.S. Trustee, (iii) establish one DIP account for all estate monies required for the payment of taxes (including payroll taxes), (iv) maintain a separate DIP account for cash collateral, and (v) obtain checks for all DIP accounts that bear the designation, "debtor in possession," the bankruptcy case number, and the type of account.[5]  The Guidelines also require debtors to close their books and records as of the petition date and to open new books and records.  These requirements are designed to provide a clear line of demarcation between pre-petition and post-petition transactions and operations and to prevent the inadvertent post-petition payment of pre-petition claims. Through this Motion, the Debtors seek relief from these requirements.

**B.      <u>Books & Records</u>.**

16.      The Debtors seek a waiver of the requirement that they open a new set of books and records as of the Petition Date.  The Debtors respectfully submit that opening a new set of books and records would create unnecessary administrative burdens and hardship and would cause unnecessary expense, utilization of resources, and delay.  With the use of computer technology, it is now easy to differentiate between pre- and post-petition transactions by date. The Debtors, in the ordinary course of their businesses, use many checks, invoices, stationery, and other Business Forms.  By virtue of the nature and scope of the businesses in which the Debtors are engaged and the numerous other parties with whom the Debtors deal, the Debtors need to use their existing Business Forms without alteration or change.  A substantial amount of time and expense would be required in order to print new checks and other business forms. Fulfillment of the requirement would likely delay payment of post-petition claims and negatively

---

[5] Local Rule 2081-1(C)(1), effective December 1, 2020, provides that "[t]he operation of a business by a debtor-in-possession in cases filed under chapter 11 will be facilitated by the entry of an order authorizing the debtor-in-possession to…substitute debtor-in-possession bank account for pre-petition bank accounts…." The Debtors seek a waiver of Local Rule 2081-1(C)(1) to the extent it requires them to close existing bank accounts and open DIP bank accounts.

10136446-6

affect operations.  Accordingly, the Debtors respectfully request that they be authorized to continue to use their existing Business Forms and to maintain their existing business records.

**C.**    **<u>Request for Waiver of Section 345 Deposit Guidelines.</u>**

17.       By this Motion, the Debtors seek a waiver of the deposit guidelines set forth in section 345(b) of the Bankruptcy Code to permit the Debtors to maintain their existing Bank Accounts and Cash Management System.  Section 345(b) of the Bankruptcy Code sets forth specific requirements for deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States … or backed by the full faith and credit of the United States…"  11 U.S.C. § 345(b).  For such deposits or investments, Section 345(b) requires, from the entity with which the money is deposited or invested, a bond in favor of the United States secured by the undertaking of a surety, or, in the alternative, a deposit of securities of the kind specified in section 9303 of title 31.  These requirements may be waived by the Court "for cause."

18.       Because of the nature of the Debtors' cases, and the nature, extent, and complexity of the Debtors' operations, which include sales to customers nationally and internationally, the Debtors seek a waiver of the requirements of the Office of the United States Trustee and Section 345 of the Bankruptcy Code.  The benefits of imposing the requirements of the Office of the United States Trustee in these cases are outweighed by the cost and disruption of opening new accounts, obtaining new check stock, manually preparing checks until the new check stock arrives, and the like.

19.       Likewise, "cause" exists to waive the requirements of Section 345.  The Debtors believe that the banks at which they maintain their accounts are financially stable banking institutions and FDIC insured. JPMorgan Chase is a depository authorized in the

10136446-6

Southern District of Florida pursuant to 11 U.S.C. § 345(b). Morgan Stanley is not an approved depository in this district; however, the Debtors submit that, because it is a financially stable banking institution and FDIC insured, the fact that Morgan Stanley is not an approved depository in this district should not preclude maintaining an account there. Additionally, as explained above, the Debtors' Bank Accounts comprise an established Cash Management System that the Debtors need to maintain in order to ensure that collections and disbursements from the Bank Accounts are not disrupted.  The Debtors will note, in their respective records, the date and times each of the Chapter 11 petitions were filed, and the records will reflect each post-petition receipt and disbursement.  Therefore, a waiver of the section 345 deposit guidelines would not pose a risk to the Debtors' estates nor their creditors.  Accordingly, the Debtors request that their existing accounts be deemed debtor-in-possession accounts, and that their maintenance and continued use be authorized.

**D.     Request for Authorization to Maintain Existing Business Forms.**

20.     The Debtors also seek authority to continue to use their pre-petition Business Forms, including, but not limited to, correspondence, checks, letterhead, purchase orders, invoices, etc. (collectively, the "Business Forms"), without reference to their status as debtors in possession. Changing correspondence and business forms would be unnecessary and burdensome, expensive and disruptive.  Given the nature and scope of the Debtors' operations, and the numerous employees, customers, suppliers of goods and services, and others with whom the Debtors transacts business, it is imperative that the Debtors be permitted to continue to use their existing Business Forms without change.

21.     Authorization to use the Business Forms will facilitate smooth and orderly Chapter 11 cases, minimize the disruption of the Debtors' business affairs (without violating the

10136446-6

requirements of, or the policies underlying, the Bankruptcy Code), and enable the Debtors to more effectively and expeditiously restructure.  Vendors doing business with the Debtors will likely be aware of the Debtors' status as debtors-in-possession as a result of receipt of notice of the commencement of these Chapter 11 cases.  The Debtors accordingly request that they be authorized to use their existing Business Forms without being required to label each with the "debtor in possession" identifier.

### **Authority for Relief**

22.     The Debtors should be authorized to continue to use their existing Bank Accounts and Cash Management System.  The Debtors will work closely with each depository institution at which a Bank Account is held to ensure that appropriate procedures are in place so that checks issued prior to the Petition Date, but presented after the Petition Date, will not be honored absent approval from the Court.  The Debtors will also maintain records of all transfers within the Cash Management System so that all transfers and transactions will be documented in their books and records to the same extent such information was maintained by the Debtors prior to the Petition Date.

23.     Permitting the Debtors to use their existing Bank Accounts and Cash Management System is in the best interests of the Debtors' estates and their creditors and other interested parties. To require the Debtors to use new accounts would be disruptive to their businesses, as it will detract from the focus to maximize the value of their assets and recoveries for all of their stakeholders. Moreover, having to open new accounts as of the Petition Date would unnecessarily distract the Debtors' key accounting and financial personnel, whose efforts are more appropriately focused on assisting with the orderly repositioning of the Debtors' assets. Furthermore, any delays or disruption in the payment of wages and other employee-related

10136446-6

expenses resulting from changing Bank Accounts would erode employee morale at this critical time and would cause the Debtors' employees to suffer hardship.  This, in turn, could result in their departure, an outcome which would severely hamper the Debtors' efforts to dispose of their assets at top value.

24.    Conversely, maintenance of the Debtors' pre-petition Bank Accounts and Cash Management System would avoid delays in the payment of necessary expenses, such as payroll, and will ensure a smooth transition into Chapter 11 without the inconvenience, cost, confusion and delay associated with transferring cash management operations to new accounts.  By allowing the continued use of their existing Bank Accounts and Cash Management System, the Debtors will have the unimpeded cash flow necessary for the maintenance of their operations. Accordingly, the Debtors respectfully request authorization to maintain their Bank Accounts and Cash Management System in the ordinary course of their business, provided that no pre-petition checks, drafts, wire transfers, or other forms of tender that have not yet cleared the relevant drawee bank as of the Petition Date will not be honored unless authorized by separate order of this Court.

25.    The Debtors also request authority to preserve various reporting and accounting mechanisms, such as signatory authorizations and accounting systems central to the maintenance of the Bank Accounts.  The interruption or termination of such reporting and accounting mechanisms would undermine the utility of the Bank Accounts.  In accordance with existing practices, the Debtors will maintain strict records of all receipts and disbursements from the Bank Accounts during the pendency of these Chapter 11 cases and will ensure that their records properly distinguish between pre- and post-petition transactions.

10136446-6

26. The Debtors' continued ordinary course use of their Cash Management System is consistent with section 363(c)(1) of the Bankruptcy Code, which allows a debtor in possession to "use property of the estate in the ordinary course of business." *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985). Courts have long recognized that strict enforcement of bank account closing requirements does not serve the purposes of Chapter 11. *See In re Columbia Gas Systems, Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992) (noting that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash"), *aff'd in part* & *rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied*, 114 S. Ct. 1050 (1994); s*ee also In re Southmark Corp.*, 49 F.3d 1111, 1113-1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets").

27. The Debtors' continued ordinary course use of their Cash Management System granting a limited waiver of the deposit guidelines set forth in section 345 of the Bankruptcy Code and the U.S. Trustee's Guidelines is also consistent with section 105 of the Bankruptcy Code. Section 105(a) is intended "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 COLLIER ON BANKRUPTCY ¶ 105.01 (16th ed. 2014). The relief requested in this Motion is necessary to preserve business continuity and to lessen the likelihood of disruption to the Debtors' operations and is in the best interests of the Debtors' creditors. The Debtors respectfully submit that relief under section 105(a) is warranted under these circumstances.

28. The Debtors should also be granted authority to maintain their existing Bank Accounts. As set forth above, the U.S. Trustee has established certain operating Guidelines for

10136446-6

debtors in possession to supervise the administration of Chapter 11 cases.  The Debtors seek a waiver of the U.S. Trustee's Guidelines that the pre-petition Bank Accounts be closed and that new post-petition bank accounts be opened.  Subject to a prohibition against honoring pre-petition checks without specific authorization from this Court, the Debtors request that the pre-petition Bank Accounts be deemed to be debtor in possession accounts, and that their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms as those employed during the pre-petition period, be authorized.  The Debtors represent that if the relief requested in this Motion is granted, it will not pay, and their banks will be directed not to pay, any debts incurred before the Petition Date, other than as authorized by this Court.

29.    The Debtors should be granted further relief from the Guidelines to the extent that they require the Debtors to make all disbursements by check.  In particular, the Guidelines require that all receipts and all disbursements of estate funds be by check with a notation representing the reason for the disbursement.  Considering the complexity of the Debtors' operations, the Debtors must conduct transactions by debit, wire, or ACH payments and other similar methods.  In addition, the Debtors receive a portion of their customer receipts from credit card purchases through ACH payments from credit card companies.  To deny the Debtors the opportunity to conduct transactions by debit, wire or ACH payments or other similar methods would interfere with the Debtors' performance of their contracts and unnecessarily disrupt the Debtors' business operations, as well as create additional costs to the Debtors.

30.    Without the relief requested in this Motion, the Debtors' business operations will suffer adverse consequences, due to the nature and complexity of those operations.

10136446-6

Accordingly, the Debtors request that the Court enter an order granting the relief requested in this Motion.

31.     Extensive authority supports the relief the Debtors seek in the Motion.  In other Chapter 11 cases, courts have recognized that strict enforcement of requirements of the United States Trustee Guidelines and section 345(b) of the Bankruptcy Code often do not serve the purposes of large, complex Chapter 11 cases.  Accordingly, courts in this District and elsewhere have often granted relief from these requirements and replaced them with alternative procedures. *See, e.g., In re It'Sugar FL I, LLC,* Case No. 20-20259-RAM (Bankr. S.D. Fla. Nov. 9, 2020); *In re TooJay's Management LLC;* Case No. 20-14792-EPK (Bankr. S.D. Fla. Aug. 7, 2020); *In re National Auto Lenders, Inc.,* Case No. 18-24586-LMI (Bankr. S.D. Fla. Feb. 7, 2019); *In re Miami Beverly, LLC,* Case No. 18-14506-LMI (Bankr. S.D. Fla. Sept. 28, 2018); *1 Global Capital LLC,* Case No. 18-19121-RAM (Bankr. S.D. Fla. Sept. 6, 2018); *In re Florida Gaming Centers, Inc.*, Case No. 13-29597-RAM (Bankr. S.D. Fla. Oct. 7, 2013); *In re TLO, LLC*, Case No. 13-28053-PGH (Bankr. S.D. Fla. June 13, 2013); *In re Ruden McClosky P.A.*, Case No. 11-40603-RBR (Bankr. S.D. Fla. Dec. 5, 2011); *In re Maguire Group Holdings, Inc. et al.*, Case No. 11-39347-RAM (Bankr. S. D. Fla. Oct. 26, 2011); *In re HearUSA, Inc.*, Case No. 11-23341-EPK (Bankr. S.D. Fla. May 16, 2011).

### Expedited Consideration and Waiver of any Applicable Stay

32.     The Debtors respectfully request expedited consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a Chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm.  Here, the Debtors believe an immediate and orderly transition into Chapter 11 is critical to the viability of its operations and that any delay in granting the relief

requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an expedited basis.

33.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**WHEREFORE**, the Debtors respectfully request the entry of an interim order, in the form attached hereto as **Exhibit "B"** (i) granting the Motion; (ii) authorizing the Debtors' continued use of their existing Cash Management System; (iii) authorizing the Debtors' continued maintenance and use of the existing, pre-petition Bank Accounts listed in attached **Exhibit "A"**; (iv) waiving the requirement that the Debtors' existing Bank Accounts be closed, and that new debtor-in-possession bank accounts be opened; (v) authorizing the continued use of the Debtors' Business Forms and checks; and (vi) granting such other and further relief as is just and proper.

10136446-6

Dated:  December 7, 2020                    Respectfully submitted,

                                            BERGER SINGERMAN LLP
                                            *Proposed Counsel for Debtors in Possession*
                                            1450 Brickell Avenue, Suite 1900
                                            Miami, FL 33131
                                            Telephone: (305) 755-9500
                                            Facsimile: (305) 714-4340

                                            By:   */s/ Christopher Andrew Jarvinen*
                                                    Paul Steven Singerman
                                                    Florida Bar No. 0378860
                                                    singerman@bergersingerman.com
                                                    Christopher Andrew Jarvinen
                                                    Florida Bar No. 21745
                                                    cjarvinen@bergersingerman.com

10136446-6

**Exhibit "A"**
**(Bank Accounts)**

| Last 4#s of Bank Account | Name of Bank/Address | Account Name | Account Type | Balance as of Petition Date | Authorized Depository Pursuant to 11 USC §345(b) |
|---|---|---|---|---|---|
| 0339 | J.P. Morgan Chase Bank, N.A. 13450 W. Sunrise Blvd., Ste. 250 Fort Lauderdale, FL 33323 | Tamarac 10200, LLC | Operating - Checking Account | $11,861.33 | Yes |
| 3110 | J.P. Morgan Chase Bank, N.A. 13450 W. Sunrise Blvd., Ste. 250 Fort Lauderdale, FL 33323 | Unipharma, LLC | Operating - Checking Account | $229,155.00 | Yes |
| 0109 | Morgan Stanley 1111 Brickell Ave., 14th Floor Miami, FL 33131 | NHTV ULM Holdings LLC Sec Pty FBO Unipharma, LLC | Portfolio Management Active Asset Account | $304.18 | No |
| 5109 | Morgan Stanley 1111 Brickell Ave., 14th Floor Miami, FL 33131 | Unipharma, LLC c/o Raimundo Jose Santa Mara Devis | Active Assets Account | $1,088.92 | No |
| **TOTAL** | | | | **$242,409.43** | |

## EXHIBIT "B"

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

TAMARAC 10200, LLC and                          Case No. _____
UNIPHARMA, LLC,                                 Case No. _____

      Debtors[1].                                Chapter 11 Cases
                                                (Joint Administration Pending)

_____/

**INTERIM ORDER (A) AUTHORIZING THE DEBTORS (I) TO MAINTAIN
BANK ACCOUNTS AND TO CONTINUE TO USE EXISTING
BUSINESS FORMS AND CHECKS, (II) TO CONTINUE TO USE
EXISTING CASH MANAGEMENT SYSTEM; AND (B)
WAIVING CERTAIN INVESTMENT AND DEPOSIT GUIDELINES**

      **THIS MATTER** came before the Court on the ____ day of December, 2020 at ____

a.m./p.m. in Fort Lauderdale, Florida, upon the motion (the "Motion") [ECF No. ___] filed by

the above-captioned debtors-in-possession (the "Debtors") for authority to maintain their existing

---

[1] The last four digits of each Debtor's federal tax identification number are Tamarac 10200, LLC (2050) and Unipharma, LLC (8962).  The address of the Debtors is 10200 N.W. 67th Street, Tamarac, FL 33321.

10136486-3

Bank Accounts[2] and to continue to use their existing Business Forms, checks and Cash Management System pursuant to sections 105(a), 363(c) and 345(b) of the Bankruptcy Code; and for a waiver of certain investment and deposit guidelines under section 345 of the Bankruptcy Code and the United States Trustee's Guidelines; the Court having reviewed the Motion and having heard the statements of counsel in support of the relief requested in the Motion at the hearing before the Court (the "Hearing"); the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (d) notice of the Motion and the Hearing was sufficient under the circumstances; and (e) the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein, it is

**ORDERED THAT**:

1.      The Motion is **GRANTED**, on an interim basis, effective as of the Petition Date.

2.      The Debtors are authorized to maintain and use their existing Cash Management System, as more fully set forth in the Motion.  In connection with the ongoing utilization of the Cash Management System, the Debtors shall continue to maintain strict records with respect to all transfers of cash so that all transactions (including intercompany transactions) may be readily ascertained, traced, recorded properly and distinguished between pre-petition and post-petition transactions.

3.      The Debtors are authorized to maintain and use their existing Bank Accounts which are identified on the schedule attached as **Exhibit "A"** to the Motion (the "Bank

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

10136486-3

Accounts") in the names and with the account numbers existing immediately prior to the Petition Date.

4.      For purposes of this Interim Order, the requirements in the United States Trustee Guidelines (the "Guidelines") that the Debtors (i) close all existing Bank Accounts and open new debtor in possession ("DIP") bank accounts in certain financial institutions designated as authorized depositories by the U.S. Trustee, (ii) establish one DIP account for all estate monies required for the payment of taxes (including payroll taxes), (iii) maintain a separate DIP account for cash collateral, (iv) obtain checks for all DIP accounts that bear the designation, "debtor-in-possession," the bankruptcy case number, and the type of account, and (v) close their books and records as of the Petition Date and to open new books and records, are all excused pending a final hearing.  The Debtors shall continue, pending such final hearing, to work with the Office of the United States Trustee for the Southern District of Florida to address the issues set forth herein, and otherwise comply with the Guidelines.

5.      The Debtors shall retain the authority to close certain of their Bank Accounts and open new debtor-in-possession accounts, or otherwise make changes to their Cash Management System as they deem necessary to facilitate their chapter 11 cases and operations, or as may be necessary to comply with the requirements of any debtor-in-possession financing facility or cash collateral usage approved by this Court.  In the event that the Debtors open or close any additional bank accounts, such opening or closing shall be timely indicated on the Debtors' monthly operating reports and/or notice of such opening or closing shall otherwise be timely provided to the Office of the United States Trustee for the Southern District of Florida and the DIP Lender, as defined in the DIP Financing Order (as defined below).

10136486-3

6.      The Debtors are authorized to deposit funds in and withdraw funds from their Bank Accounts by all usual means including, but not limited to, checks, wire transfers, automated clearinghouse transfers, electronic funds transfers and other debits and to treat the Bank Accounts for all purposes as debtor-in-possession accounts.

7.      The Debtors are authorized to continue to use their preprinted checks, correspondence and Business Forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials and other business forms, substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' debtor-in-possession status; provided that the Debtors will add the "Debtor-in-Possession" designation to any new checks that they obtain or create post-petition.

8.      The bank listed on **Exhibits "A"** to the Motion, and any and all other financial institutions receiving or transferring funds from or to the Debtors, are authorized and directed to cooperate with respect to the Debtors' efforts to maintain and use their Cash Management System and accounts.

9.      Those certain existing deposit agreements between the Debtors and their existing depository and disbursement banks (including any deposit account control agreements) shall continue to govern the postpetition cash management relationship between the Debtors and such banks, and all of the provisions of such agreements.

10.      The Debtors may, without further order of this Court, implement changes to the cash management systems and procedures in the ordinary course of business pursuant to terms of those certain existing deposit agreements, including, without limitation, the opening and closing of bank accounts, subject to the notice provisions of paragraph 5 of this Order.

4

11.     In the course of providing cash management services to the Debtors, each of the banks that maintain the Bank Accounts is authorized, without further order of this Court, to deduct the applicable fees and expenses consistent with the charges and practices that existed prepetition and associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or postpetition, from the appropriate accounts of the Debtors, and further, to charge-back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from wire transfers, ACH transactions, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or post-petition items or transfers. Except as explicitly provided herein or in orders of the Court governing or authorizing the Debtors' use of the Senior Secured Lender's cash collateral, subject to Section 553 of the Bankruptcy Code, the bank that maintains the Bank Accounts, and any and all other financial institutions receiving or transferring funds from or to the Debtors, are prohibited from offsetting, affecting, freezing or otherwise impeding the Debtors' use of any funds in the Bank Accounts on account of, or by reason of, any claim (as defined in section 101(5) of the Bankruptcy Code) of any such bank against the Debtors that arose before the Petition Date.

12.     Each of the banks that maintain the Bank Accounts are authorized to debit the Debtors' accounts in the ordinary course and consistent with prepetition practices, and without further order of this Court on account of  (i) all checks drawn on the Debtors' accounts which are cashed at such bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of Debtors' accounts with such bank prior to the Petition Date which have been dishonored or returned unpaid for any reason,

5

together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any such bank as service charges for the maintenance of the cash management system; and (iv) all reversals, returns, refunds, and chargebacks of checks, deposited items, and other debits credited to Debtors' accounts after the Petition Date, regardless of the reason such item is returned or reversed (including, without limitation, for insufficient funds or a consumer's statutory right to reverse a charge).

13.     The Debtors may, and do, authorize each bank, in their respective capacities as cash management service providers, consistent with prepetition practices, without the need for further order of this Court, to hold or otherwise set aside an amount of funds reasonably necessary to cover outstanding items and potential reversals, returns, refunds, or chargebacks of checks, deposited items, and other debits credited to Debtors' accounts and any fees and costs in connection therewith, and such bank may debit or setoff against such funds for any outstanding cash management liabilities owing to it in accordance with the existing deposit agreements and other cash management agreements between any Debtor and such bank, as applicable. All payments to such bank are authorized pursuant to this Paragraph 13 and all bank fees shall be accorded administrative expense status pursuant to section 503(b) of the Bankruptcy Code.

14.     Any bank may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and such bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in a good faith belief that this

6

Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of customary item handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order.

15.    For purposes of this Interim Order, the Debtors are authorized to deposit funds in accordance with their established deposit practices in effect as of the commencement of these chapter 11 cases and, to the extent that such deposit practices are not consistent with the requirements of section 345(b) of the Bankruptcy Code or the Guidelines for chapter 11 cases, such requirements are waived, on an interim basis, until the final hearing, without prejudice to the Debtors' right to seek a further waiver.

16.    Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any interim or final order entered by the Court approving the Debtors' entry into any post-petition debtor in possession financing facility (the "DIP Financing Order"). To the extent that there is any inconsistency between the terms of this Order and the DIP Financing Order, the terms of the DIP Financing Order shall control.

17.    The Court shall conduct a final hearing on the Motion on _____, 2020 at _____ **a.m./p.m., United States Bankruptcy Court, United States Courthouse, 299 East Broward Boulevard, Courtroom _____, Fort Lauderdale, FL  33301.**

18.    The Court retains jurisdiction to hear and determine all matters arising from or relating to the interpretation or implementation of this Order.

# # #

7

10136486-3

Submitted by:
Christopher Andrew Jarvinen, Esq.
cjarvinen@bergersingerman.com
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

*(Christopher Andrew Jarvinen, Esq. is directed to serve a copy of this order on interested parties and file with the Court a certificate of service.)*

8

10136486-3