UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

TAMARAC 10200, LLC and         Case No. 20-bk-23346-PDR
UNIPHARMA, LLC,         Case No. 20-bk-23348-PDR

     Debtors[1].         Chapter 11 Cases
        (Jointly Administered)

_____/

**DEBTORS' EXPEDITED MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES, (II) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**
**(Expedited Hearing Requested[2])**

**Any utility who fails to file with the Court and serve Debtor's counsel a written response to this motion at least two business days prior to the scheduled hearing on this Motion, pursuant to Local Rule 9013-1(L), will be deemed to have consented to the entry of an order in the form attached to this motion (unless the hearing is set on less than five days' notice). Any scheduled hearing may then be canceled.**

Tamarac 10200, LLC ("Tamarac") and Unipharma, LLC ("Unipharma", and together with Tamarac, collectively, the "Debtors")ʼ by and through their proposed undersigned counsel, file this motion (the "Motion"), on an expedited basis, for the entry of an interim and final

---

[1] The last four digits of each Debtor's federal tax identification number are Tamarac 10200, LLC (2050) and Unipharma, LLC (8962).  The address of the Debtors is 10200 N.W. 67th Street, Tamarac, FL 33321.

[2] Section 366(b) of the Bankruptcy Code provides, in part, that a utility provider may alter, refuse or continue service if the chapter 11 debtor, within 20 days after the date of the order for relief, furnishes adequate protection in the form of a deposit for service after such date. 11 U.S.C. § 366(b). Section 366(c)(2) of the Bankruptcy Code provides, in part, that subject to paragraphs (3) and (4), with respect to a chapter 11 case, a utility provider may alter, refuse or continue service if the chapter 11 debtor, within 30 days after the date of the order for relief, the utility provider has not received adequate assurance of payment for utility services satisfactory to the utility provider. 11 U.S.C. § 366(b). The Debtors filed these chapter 11 cases on December 7, 2020; thus 20 and 30 days after the Petition Date (as defined in paragraph 4, below), is December 27, 2020 (Sunday) and January 6, 2021 (Wednesday), respectively. Accordingly, the Debtors respectfully request that this Motion be heard on an interim basis on December 21, 2020 at 1:30 P.M., and on a final basis on December 30, 2020 at 10:00 a.m. when other matters in these chapter 11 cases are set for hearing.

orders, (i) determining that the Debtors' Utility Providers (defined herein) have been provided with adequate assurance of payment within the meaning of 11 U.S.C. § 366; (ii) approving the Debtors' proposed adequate assurance and related procedures; (iii) prohibiting the Utility Providers from altering, refusing or discontinuing Utility Services (defined herein) on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance; (iv) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed in this Motion; and (v) granting related relief.  In support of this Motion, the Debtors rely upon the *Declaration of Neil F. Luria in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 10] (the "First Day Declaration") filed on the Petition Date (as hereinafter defined) and incorporated herein by reference, and respectfully represent as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are section 105 and 363 of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(L) of the Local Bankruptcy Rules for the Southern District of Florida (the "Local Rules").

### Background

4.      On December 7, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

10136506-6

5.      The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6.      For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration.

## The Utility Providers

7.      In connection with the operation of their business, the Debtors use electric, gas, water/sewer, and other services (collectively, the "Utility Services") provided by approximately 8 utility providers and other entities (collectively, the "Utility Providers"). A list identifying the Utility Providers is attached hereto as **Exhibit "A"** (the "Utility Provider List"). The Debtors' business operations depend upon uninterrupted service in order to continue operations and preserve the value of their assets.

8.      Historically, the Debtors spend an aggregate of approximately $71,776.25 each month on Utility Services from the Utility Providers. Certain Utility Providers have required the Debtors to post deposits to secure the Debtors' payment or performance of certain obligations. The obligations secured by these deposits include the Debtors' obligations to pay certain Utility Services. Two of the Utility Providers, Florida Power and Light ("FPL") and the City of Sunrise Public Service (the "City of Sunrise"), collectively hold security deposits aggregating approximately $101,010.00. Of that $101,010.00, FPL holds $47,010 for two accounts, and the City of Sunrise holds $54,000. Of the approximately $75,550.01 spent each month on Utility Services, FPL and the City of Sunrise are collectively paid approximately $56,175.30 or approximately 74.4%.

9.      In general, the Debtors have established satisfactory payment history with the Utility Providers. To the best of the Debtors' knowledge, there are no material defaults or

arrearages outstanding with respect to undisputed invoices for Utility Services as of the Petition Date.  The Debtors intend to pay any post-petition obligations for Utility Services in a timely fashion and in the ordinary course.

10.    Uninterrupted utility services are essential to ongoing operations and, therefore, to the success of the Debtors' Chapter 11 cases.  Should the Utility Providers refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted. The impact on the Debtors' business operations, revenue and profits would be extremely harmful and would jeopardize the Debtors' efforts in connection with the above captioned cases.  It is therefore critical that utility services continue uninterrupted.

**<u>Relief Requested</u>**

11.    Section 366(b) of the Bankruptcy Code prevents utility companies from discontinuing, altering or refusing service to a debtor during the initial twenty (20) days of a bankruptcy case.  However, a utility company has the option of terminating its services thirty (30) days from the Petition Date pursuant to section 366(c)(2) of the Bankruptcy Code if a debtor has not furnished adequate assurance of payment.

12.    By this Motion, the Debtors seek entry of interim and final orders: (i) determining that the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (ii) approving the Proposed Adequate Assurance and the Adequate Assurance Procedures (as each is defined below); (iii) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Proposed Adequate Assurance; (iv) determining that the Debtors are not required to provide any additional adequate assurance beyond what the Proposed Adequate Assurance; and (v) granting related relief.

10136506-6

A.      **The Proposed Adequate Assurance**

13.      The Debtors intend to pay all postpetition obligations owed to the Utility Providers in a timely manner and expect that revenue generated from business operations and/or funds from their post-petition financing will be sufficient to pay all undisputed postpetition utility obligations.

14.      Nevertheless, to provide adequate assurance of payment for future services to the Utility Providers as set forth in section 366(c) of the Bankruptcy Code, the Debtors propose to deposit an initial cash sum (the "Adequate Assurance Deposit") within ten (10) business days after the date of entry of the order approving this Motion into a newly-created, segregated, interest-bearing account under the Debtors' control (the "Adequate Assurance Account") to be opened at an institution that is an approved depository, for the benefit of the Utility Providers, unless any such Utility Provider agrees in writing to a lesser amount or is paid in advance for Utility Services.

15.      The Debtors propose that the amount of the Adequate Assurance Deposit to be equal to the approximate aggregate cost of two weeks of Utility Services provided by the Utility Providers servicing the Debtors' business, calculated using the historical average for such payments over the last twelve months,[3] and adjusted downwards per account by the available security deposit and/or surety bond for that particular account -- the Adequate Assurance Deposit.  As such, the Debtors propose an Adequate Assurance Deposit in the total amount of $9,618.36; provided that the Debtors may, in their sole discretion and without further application to or order of the Court, reduce this amount in the event that their relationship with any Utility Provider ends as a result of a store closure or otherwise.  In that event, the Debtors may reduce

---

[3] One of the Utility Providers, Waste Management has been providing services to Unipharma for less than 1 year. The proposed adequate assurance reflects a deposit equal to two weeks of services since the time they have been providing the utility services to Unipharma.

10136506-6

the Adequate Assurance Deposit by the portion escrowed for any Utility Provider whose relationship has been terminated.

16.     The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' previous security deposits and the Debtors' ability to pay for future Utility Services in the ordinary course of business (collectively, the "Proposed Adequate Assurance"), constitute sufficient adequate assurance to the Utility Providers.  If any Utility Provider believes additional assurance is required, it may request such assurance pursuant to the following procedures.

**B.      The Proposed Adequate Assurance Procedures**

17.     In light of the severe consequences to the Debtors of any interruption in services by the Utility Providers, but recognizing the right of the Utility Providers to evaluate the Proposed Adequate Assurance on a case-by-case basis, the Debtors propose the following procedures (the "Adequate Assurance Procedures") for approval by the Court:

(a)     Absent compliance with the Adequate Assurance Procedures, the Utility Providers may not alter, refuse, or discontinue service to or otherwise discriminate against the Debtors on account of the commencement of these Chapter 11 cases or any unpaid prepetition charges or request payment of a deposit or receipt of other security in connection with any unpaid prepetition charges.

(b)     Within three (3) business days after the entry of the order on the Motion, the Debtors will serve a copy of the order on the Utility Providers on the Utility Provider List by first class mail. In the event that any Utility Provider has been omitted from the Utility Provider List, the Debtors shall supplement this list and shall promptly serve a copy of the order on such Utility Provider upon learning of such omission.

(c)     If a Utility Provider is not satisfied with the Proposed Adequate Assurance provided by the Debtors, the Utility Provider must make a request for an additional assurance of payment (an "Adequate Assurance Request") and serve such request so that it is received by the Debtors and their bankruptcy counsel at the following addresses no later than fifteen (15) days of entry of an order granting this Motion: (i) Debtors c/o Tamarac 10200, LLC and Unipharma, LLC, 10200 N.W. 67th Street, Tamarac, FL 33321 (Attn: Waite Popejoy, Email: wpopejoy@soliccapital.com); (ii)

Debtors' Chief Restructuring Officer, Neil F. Luria of SOLIC Capital Advisors, LLC, 25 West New England Avenue, Ste. 300, Winter Park, FL 32789, Email: nluria@soliccapital.com; and (iii) attorneys for the Debtors, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131 (Attn: Paul Steven Singerman, Esq., Email: singerman@bergersingerman.com and Christopher Andrew Jarvinen, Esq., Email: cjarvinen@bergersingerman.com).

(d)     Any Adequate Assurance Request must: (i) be made in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposit; (iv) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment; and (v) include a proposal for what would constitute adequate assurance of future payment from the Debtors, along with an explanation of why such proposal is reasonable.   Any Adequate Assurance Request that fails to meet these requirements shall be deemed an invalid request for adequate assurance.

(e)     Upon the Debtors' receipt of any Adequate Assurance Request at the addresses set forth above, the Debtors shall have until thirty (30) days from the receipt of such Adequate Assurance Request or such other date as the parties mutually agree (the "Resolution Period") to negotiate with such Utility Provider to resolve such Utility Provider's request for additional assurance of payment and advise the Utility Provider that the Adequate Assurance Request is acceptable.

(f)     If the Debtors determine, in their discretion, that an Adequate Assurance Request or any consensual agreement reached in connection therewith is reasonable, the Debtors, without further order of the Court, may enter into agreements granting additional adequate assurance to the Utility Provider serving such Adequate Assurance Request and, in connection with such agreements, provide the Utility Provider with additional adequate assurance of payment, including payments on prepetition amounts owing, cash deposits, prepayments, or other forms of security, and to the extent authorized pursuant to any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder.

(g)     If the Debtors determine that the Adequate Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

10136506-6

(h)     Pending resolution of an Adequate Assurance Request at any such Determination Hearing and entry of a final, non-appealable order thereon finding that the Utility Provider is not adequately assured of future payment, such Utility Provider shall be prohibited from discontinuing, altering or refusing service to the Debtors on account of unpaid charges for prepetition service or on account of any objections to the Proposed Adequate Assurance.

(i)     Any Utility Provider that does not timely request assurance of payment through an Adequate Assurance Request pursuant to the Adequate Assurance Procedures, automatically will be deemed to have received assurance of payment that is satisfactory to the Utility Provider under section 366(c)(2) without further action by the Debtors and without prejudice to the right of such Utility Provider to seek relief in the future pursuant to section 366(c)(3), subject to the requirements imposed by Local Rule 2081-1(g)(7).[4]

18.     The Debtors request that any security deposits and/or surety bonds that were in place prior to the Petition Date shall remain in place and shall continue to be held by those Utility Providers holding the same, except upon either (a) written agreement(s) between the Debtors and a Utility Provider, or other applicable procedures, without further order of the Court or (b) further order(s) of the Court.

19.     The Debtors also request authorization to adjust periodically the amount in the Adequate Assurance Deposit to reflect the following factors: (a) the termination of Utility Services by the Debtors; (b) the entry into any agreements between the Debtors and the applicable Utility Provider; and (c) the removal of any amount spent on Utility Services from Utility Providers that hold a postpetition security deposit, surety bond or other security from the Debtors for such services.

---

[4] As a condition of accepting an Adequate Assurance Deposit, the Debtors propose that a Utility Provider shall be deemed to have stipulated that the Adequate Assurance Deposit constitutes adequate assurance of payment to such Utility Provider within the meaning of section 366 of the Bankruptcy Code, and shall be prohibited from challenging or opting out of the Adequate Assurance Procedures, filing an Adequate Assurance Request, or requesting any additional adequate assurance of payment of any kind at any time, notwithstanding any attempt by such Utility Provider to reserve a right to seek any such relief.

**C.     Subsequent Modifications of Utility Service List**

20.     Although, the Debtors have made every attempt to identify any and all Utility Providers, certain Utility Providers that currently provide Utility Services to the Debtors may not be listed on the Utility Provider List.   Accordingly, the Debtors request that the Court: (a) authorize the Debtors to provide notice and a copy of the order granting this Motion to Utility Providers not listed on the Utility Provider List (collectively, the "Additional Utility Providers"), as such Utility Providers are identified, and (b) provide that the Additional Utility Providers are subject to the terms of the order, including the Adequate Assurance Procedures.   As a result, each Additional Utility Provider will be afforded thirty (30) days from the service of the order granting this Motion on such Additional Utility Provider to request assurance of payment from the Debtors pursuant to the Adequate Assurance Procedures.

**The Requested Relief Should Be Granted**

21.     Section 366(a) of the Bankruptcy Code protects a debtor against the immediate termination of utility services after it files for bankruptcy.   Pursuant to this section, a utility provider may not, during the first twenty (20) days of the case, alter, refuse or discontinue services to a debtor in a Chapter 11 case solely because of unpaid prepetition amounts if a debtor furnishes "adequate assurance" of payment.   However, the utility provider may do so thereafter unless the debtor furnishes "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility provider within thirty (30) days of the Petition Date.

22.     Section 366(c) of the Bankruptcy Code (a) defines the forms of adequate assurance of payment that a debtor may employ in providing adequate assurance of payment to include cash deposits, letters of credit, certificates of deposit, surety bonds, prepayments of utility consumption or another form of security that is mutually agreed on between the utility

9

provider and the debtor; (b) excludes from the definition of adequate assurance the availability of an administrative expense claim; and (c) provides that a court may not consider certain facts in determining the amount of assurance that is adequate. 11 U.S.C. §§ 366(c)(1)(A)–(B) and (c)(3)(B).

23.     Although section 366 of the Bankruptcy Code does clarify what forms adequate assurance of payment may take and what factors the court should consider when determining whether such assurance is adequate, the statute still requires courts to determine what amount, if any, is necessary to provide adequate assurance of payment. Congress did not set a minimum adequate assurance amount, but rather vested discretion in the courts to determine the appropriate level of adequate assurance required in each case.  Accordingly, section 366 of the Bankruptcy Code does not give utility companies a blank check or the right to extract from debtors an unlimited amount of adequate assurance. Under section 366(c) of the Bankruptcy Code, there is nothing to prevent a court from deciding that, on the facts of the case before it, the amount required of a debtor to adequately assure payment to utility providers is zero or nominal.[5]

24.     In addition, section 366(b) requires only that a utility's assurance of payment be "adequate."  Courts have long recognized that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay.  *See, e.g., In re Caldor, Inc. - N.Y.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires [a] [b]ankruptcy [c]ourt to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of

_____

[5] Under section 366 prior to the 2005 amendments to the Bankruptcy Code, courts had the discretion to determine that the amount of adequate assurance payments or collateral required in a particular case was zero.  *See Virginia Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to modify the level of the deposit or other security, provided for under §366(b), includes the power to require no deposit or other security where none is necessary to provide a utility supplier with adequate assurance of payment."). Since the revised section 366(c)(3) still allows the courts to order the modification of the amount of an assurance of payment, the courts remain free to require no deposit or security where none is necessary to ensure adequate assurance of payment in any particular case.

payment. The statute does not require an 'absolute guarantee of payment.'") (citations omitted) (hereinafter "Caldor"), *aff'd sub nom Virginia Elec. & Power Co. v. Caldor, Inc.* - N.Y., 117 F.3d 646 (2d Cir. 1997); *In re New Rochelle Tel. Corp.*, 397 B.R. 633, 639 (Bankr. E.D.N.Y. 2008); *In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . . [A]ll § 366(b) requires is that a utility be protected from an unreasonable risk of non-payment"); *In re Adelphia Bus. Sols.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment*"); In re Penn Jersey Corp.*, 72 B.R. 981, 982 (Bankr. E.D. Pa. 1987) (stating that section 366(b) of the Bankruptcy Code "contemplates that a utility receive only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's financial circumstances").  Whether utilities are subject to an unreasonable risk of nonpayment for postpetition services must be determined from the facts of each case.  *See In re Anchor Glass Container Corp.*, 342 B.R. 872, 875 (Bankr. M.D. Fla. 2005); *In re Keydata Corp.*, 12 B.R. 156 (Bankr. D. Mass. 1981).

25.     Furthermore, in this analysis, courts have recognized that "[i]n deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must 'focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Virginia Elec. & Power Co.*, 117 F.3d at 650 (emphasis in original) (quoting *Penn Jersey*, 72 B.R. at 985); *In re Adelphia Bus. Sols.*, 280 B.R. at 80 ("The requirement for 'adequate assurance' of payment, which, at least in this Circuit, need not necessarily be provided by deposit."); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (upholding lower court's decision that no utility deposits were necessary where such deposits "would jeopardize the continuing operation

of the [debtor] merely to give further security to suppliers who already are reasonably protected"); *see also New Rochelle Tel. Corp.*, 397 B.R. at 639 ("deciding what constitutes adequate assurance, a bankruptcy court must focus on the utility's need for assurance with the debtor's scarce financial resources").

26.    Based upon the foregoing, the Debtors believe the Utility Providers have adequate assurance of payment even without recourse to the Adequate Assurance Deposit. The Debtors anticipate having sufficient resources to pay, and intend to pay, all valid postpetition obligations for utility services in a timely manner. In addition, the Debtors' reliance on the Utility Services for the operation of their businesses and preservation of value of their assets provides them with a powerful incentive to stay current on their utility obligations. Significantly, two of the seven the Utility Providers are already the beneficiaries of approximately $101,010.00 in security deposits in excess of the Adequate Assurance Deposit. These factors, which the Court may consider when determining the amount of any adequate assurance payments, justify finding that the Debtors are not required to make any additional adequate assurance payments in these Chapter 11 cases. In light of the foregoing, the Debtors respectfully submit that the Proposed Adequate Assurance is more than sufficient to assure the Utility Providers of future payment. By offering the Proposed Adequate Assurance and the Additional Adequate Assurance Procedures, the Debtors seek to implement an organized process that facilitates the determination of the amount of assurance of payment that is adequate.

27.    Absent the approval of the proposed procedures, the Utility Providers could discontinue service, without warning, thirty (30) days after the Petition Date, if they claim they have not yet received a "satisfactory" adequate assurance payment. The Debtors could then be forced to address numerous requests by Utility Providers in an unorganized manner at a critical

10136506-6

period in their Chapter 11 cases when their efforts should be focused on maximizing value for all of their stakeholders.  The orderly process contemplated by the Additional Adequate Assurance Procedures is necessary for a smooth transition by the Debtors into Chapter 11 and will aid in their restructuring efforts.  Moreover, the proposed procedures will ensure that all parties act in good faith by establishing a fair process. Because the Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, the Court should grant the relief requested herein.

28.    Moreover, this Court has the authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  The basic purpose of section 105 is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction."  *See* 2 COLLIER ON BANKRUPTCY ¶ 105.01, at 105-6 (Alan N. Resnick & Henry J. Sommers eds., 16th ed 2014).  As such, the determination of "adequate assurance" within the meaning of section 366 of the Bankruptcy Code is fully within this Court's discretion.  *See In re Marion Steel Co.*, 25 B.R. 188, 198 (Bankr. D. Ohio 1983).  In this regard, bankruptcy courts are not bound by state or local regulations governing what constitutes adequate assurance of payment for postpetition utility services.  *Id*. at 199; *In re Begley*, 41 B.R. 402, 405-06 (Bankr. E.D. Pa. 1984), *aff'd*, 760 F.2d 36 (3d Cir. 1987).

29.    The Debtors submit that on the facts of these Chapter 11 cases, the Proposed Adequate Assurance is sufficient to provide adequate assurance to the Utility Providers of the Debtors' future performance. Additionally, the Debtors propose to further protect the Utility Providers through the Adequate Assurance Procedures outlined above.  The Debtors submit that

13

granting the requested relief will not prejudice the rights of the Utility Providers to seek additional adequate assurance of payment under section 366 of the Bankruptcy Code should the Proposed Adequate Assurance fail to provide the Utility Providers with adequate assurance of payment.

30.     As stated above, the Debtors cannot continue their operations without the continued services of the Utility Providers. If any of the Utility Providers alter, refuse, or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted and the value of their estates would be negatively impacted. In contrast, if the Court grants the relief requested herein, the Utility Providers will not be prejudiced by the continuation of their services.

31.     Relief similar to that sought herein has been granted by this Court and courts in other Districts. *See In re Pace Industries*, LLC, No. 20-10927 (MFW) (Bankr. D. Del. April 14, 2020); *In re The Krystal Company*, No. 20-61065 (PWB) (Bankr. N.D. Ga. Feb. 13, 2020); *In re VCHP Neptune Beach, LLC*, No. 3:20-bk-00740-CJJ (Bankr. M.D. Fla. Mar. 19, 2020); *Integrity Home Health Care, Inc.*, No. 8:20-bk-00014-CPM (Bankr. M.D. Fla. Jan. 24, 2020); *In re Mattress Pal Holdings, LLC*, No. No. 6:19-bk-02247-CCJ (Bankr. M.D. Fla. April 11, 2019); *See, e.g., In re Adinath Corp., et al.*, Case No. 15-16885-LMI (Bankr. S.D. Fla. May 13, 2015); *In re Antaramian Properties, LLC*, No. 9:14-bk-10145-CED (Bankr. M.D. Fla. Oct. 20, 2014); *In re WRS Holding Company*, No. 8:14-08588-CPM (Bankr. M.D. Fla. Aug. 13, 2014); *In re Decorator Industries, Inc.*, Case No. 11-37641-BKC-JKO (Bankr. S.D. Fla. Oct. 6, 2011); *In re Robb & Stucky Limited LLLP*, No. 8:11-bk-02801-CED (Bankr. M.D. Fla. Feb. 24, 2011).

32.     Accordingly, the Debtors submit that granting the relief requested in this Motion is both necessary and appropriate.  Such relief will help the Debtors' efforts to restructure

successfully and will not prejudice the rights of the Utility Providers under section 366 of the Bankruptcy Code.

### Expedited Consideration and Waiver of any Applicable Stay

33.     The Debtors respectfully request expedited consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a Chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Here, the Debtors believe an immediate and orderly transition into Chapter 11 is critical to the viability of its operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an expedited basis.

34.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

35.     No prior motion for the relief requested herein has been made to this or any other court.

### Local Rule 9013-1(L)(2)(b) Certification

I CERTIFY that undersigned counsel for the Debtors has contacted the Utility Providers (other than FPL and the City of Sunrise) and made a good faith effort to comply with the

requirements under § 366, prior to the filing of the motion. Specifically, the Debtors have come to agreements regarding the amount of adequate assurance deposits with Waste Management and Harmony Environmental; however, no such agreements were reached (for various reasons, including the inability to provide a substantive response to the adequate assurance deposit proposed by the Debtors) with City of Tamarac, AT&T, Comcast Business or Ring Central.

**WHEREFORE**, the Debtors respectfully request the Court to enter an interim order substantially in the form attached hereto as **<u>Exhibit "B"</u>**: (i) determining that their Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (ii) approving the Proposed Adequate Assurance and the Adequate Assurance Procedures; (iii) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequately or Proposed Adequate Assurance; (iv) determining that the Debtors are not required to provide any additional adequate assurance beyond the Proposed Adequate Assurance; (v) scheduling a final hearing on this Motion for December 30, 2020 at 10:00 a.m.; and (vi) granting such other and further relief and this Court deems necessary.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

10136506-6

Dated:  December 14, 2020

Respectfully submitted,

BERGER SINGERMAN LLP
*Counsel for Debtors in Possession*
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By:   /s/ *Paul A. Avron*
       Paul Steven Singerman
       Florida Bar No. 0378860
       singerman@bergersingerman.com
       Christopher Andrew Jarvinen
       Florida Bar No. 21745
       cjarvinen@bergersingerman.com
       Paul A. Avron
       Florida Bar No. 50814
       pavron@bergersingerman.com

10136506-6

**EXHIBIT A**

| Utility Name | Account Number | Address | City | State | Zip Code | Last 12 months Paid | Last 12 months Period ended | Monthly Average | Deposit Held by the Utility (If Any) | Proposed Adequate Assurance |
|---|---|---|---|---|---|---|---|---|---|---|
| FPL | 3258905292 | General Mail Facility | Miami | FL | 33188-0001 | 10/27/2020 | $ 123,195.67 | $ 10,266.31 | $ 15,920.00 | None beyond deposit currently held |
| FPL | 8163758421 | General Mail Facility | Miami | FL | 33188-0001 | 10/27/2020 | $ 453,663.13 | $ 37,805.26 | $ 31,090.00 | None beyond deposit currently held |
| City of Tamarac | 000114987-009990134 | 7525 NW 88th Ave | Tamarac | FL | 33321-2401 | 10/29/2020 | $ 80,127.46 | $ 6,677.29 | $ - | $ 3,338.65 |
| City of Sunrise Public Service | 494163-131562 | PO Box 31432 | Tampa | FL | 33631-3432 | 10/22/2020 | $ 97,244.73 | $ 8,103.73 | $ 54,000.00 | None beyond deposit currently held |
| Ring Central, Inc. | (954) 951-3655 | Dept. CH 19585 | Palatine | IL | 60055-9585 | 11/9/2020 | $ 26,105.85 | $ 2,175.49 | $ - | $ 1,018.75 |
| AT&T | 287257547306 | PO BOX 6463 | Carol Stream | IL | 60197 | 10/27/2020 | $ 2,799.71 | $ 233.31 | $ - | $ 116.65 |
| AT&T | 8310005491979 | PO BOX 6463 | Carol Stream | IL | 60197 | 10/19/2020 | $ 5,494.39 | $ 457.87 | $ - | $ 228.94 |
| Comcast Business | 8495 75 382 1444204 | PO BOX 71211 | Charlotte | NC | 28272-1211 | 10/20/2020 | $ 5,300.77 | $ 441.73 | $ - | $ 220.86 |
| Harmony Environmental, Inc. | None | 3362 Cat Brier Trail | Harmony | FL | 34473 | 10/31/2020 | $ 87,515.81 | $ 7,292.98 | | $ 3,646.49 |
| Waste Management | 23-61949-13006 | PO BOX 4648 | Carol Stream | IL | 60197-4648 | 10/31/2020 | $ 2,918.04 | $ 729.51 | $ - | $ 364.75 |
| Waste Management | 23-63005-13003 | PO BOX 4648 | Carol Stream | IL | 60197-4648 | 10/31/2020 | $ 2,139.53 | $ 713.18 | $ - | $ 356.59 |
| Waste Management | 23-71136-93001 | PO BOX 4648 | Carol Stream | IL | 60197-4648 | 10/31/2020 | $ 1,306.69 | $ 653.35 | $ - | $ 326.68 |
| | | | | | | TOTAL | $ 887,811.78 | $ 75,550.01 | $ 101,010.00 | $ 9,618.36 |

# EXHIBIT "B"

**(Proposed Interim Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

TAMARAC 10200, LLC and                          Case No. 20-bk-23346-PDR
UNIPHARMA, LLC,                                 Case No. 20-bk-23348-PRD

      Debtors[1].                               Chapter 11 Cases
                                                (Joint Administration Pending)

_____/

**INTERIM ORDER GRANTING DEBTORS' EXPEDITED MOTION FOR INTERIM
AND FINAL ORDERS DETERMINING ADEQUATE ASSURANCE OF PAYMENT
FOR FUTURE UTILITY SERVICES AND SETTING FINAL HEARING**

      **THIS MATTER** having come before the Court for a hearing on December ___, 2020 at

_____ a.m./p.m. in Fort Lauderdale, Florida upon the *Debtors' Expedited Motion for Interim and*

*Final Orders Determining Adequate Assurance of Payment for Future Utility Services* [ECF No.

___] (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession

(collectively, the "Debtors").  The Court, having considered the Motion, finding that: (a) the

---

[1] The last four digits of each Debtor's federal tax identification number are Tamarac 10200, LLC (2050) and
Unipharma, LLC (8962).  The address of the Debtors is 10200 N.W. 67th Street, Tamarac, FL 33321.
[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

10136575-2

Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (c) this matter is core pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the Constitution; (d) notice of the Motion and the hearing thereon was sufficient under the circumstances; and (e) the Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein, it is

   **ORDERED** that:

   1.  The Motion is **GRANTED**, on an interim basis.

   2.  The Debtors are hereby authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

   3.  The terms and conditions of this Order shall be immediately effective and enforceable upon its entry and the Debtors' offer of adequate assurance is deemed satisfactory for this Interim Order.

   4.  The Utility Providers are forbidden to discontinue, alter or refuse service on account of any unpaid prepetition charges, or require additional adequate assurance of payment other than the Proposed Adequate Assurance pending entry of the Final Order.

   5.  Any Utility Provider who accepts an Adequate Assurance Deposit shall be deemed to have stipulated that the Adequate Assurance Deposit constitutes adequate assurance of future payment to such Utility Provider, and such Utility Provider shall be deemed to have waived any right to seek additional adequate assurance during the course of these chapter 11 cases.

10136575-2

6.    Any Utility Provider desiring a deposit in an amount greater than the Adequate Assurance Deposit must request such assurance pursuant to the following procedures (the "Adequate Assurance Procedures"):

    a.    Absent compliance with the Adequate Assurance Procedures, the Utility Providers are forbidden to discontinue, alter or refuse service on account of any unpaid prepetition charges, or require additional adequate assurance of payment other than the Proposed Adequate Assurance pending entry of the Final Order.

    b.    Any Utility Provider desiring an Adequate Assurance Deposit must serve a request (an "Adequate Assurance Request") so that it is received by the Debtors and their bankruptcy counsel at the following addresses by January __, 2021 (15 days from the entry of this Order): (i) Debtors c/o Tamarac 10200, LLC and Unipharma, LLC, 10200 N.W. 67th Street, Tamarac, FL 33321 (Attn: Waite Popejoy, Email: wpopejoy@solicapital.com); (ii) Debtors' Chief Restructuring Officer, Neil F. Luria of SOLIC Capital Advisors, LLC, 25 West New England Avenue, Ste. 300, Winter Park, FL 32789, Email: nluria@soliccapital.com; (iii) attorneys for the Debtors, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131 (Attn: Paul Steven Singerman, Esq., Email: singerman@bergersingerman.com and Christopher Andrew Jarvinen, Esq., Email: cjarvinens@bergersingerman.com).

    c.    Any Adequate Assurance Request must: (i) be made in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposit; and (iv) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment; and (v) include a proposal for what would constitute adequate assurance of future payment from the Debtors, along with an explanation of why such proposal is reasonable. Any Adequate Assurance Request that fails to meet these requirements shall be deemed an invalid request for adequate assurance.

    d.    Upon the Debtors' receipt of any Adequate Assurance Request at the addresses set forth above, the Debtors shall have until thirty (30) days from the receipt of such Adequate Assurance Request or such other date as the parties mutual agreement (the "Resolution Period") to negotiate with such Utility Provider to resolve such Utility Provider's request for additional assurance of payment and advise the Utility Provider that the Adequate Assurance Request is acceptable.

3

e.    If the Debtors determine, in their discretion, that an Adequate Assurance Request or any consensual agreement reached in connection therewith is reasonable, the Debtors, without further order of the Court and subject to reasonable notice to the DIP Lender, as defined in the DIP Financing Order (as defined below), may enter into agreements granting additional adequate assurance to the Utility Provider serving such Adequate Assurance Request and, in connection with such agreements, provide the Utility Provider with additional adequate assurance of payment, including payments on prepetition amounts owing, cash deposits, prepayments, or other forms of security, and to the extent authorized pursuant to any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder.

f.    If the Debtors determine that the Adequate Assurance Request is not reasonable and is not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

7.    The Debtors are authorized to add or remove any Utility Provider from the Utility Service List. To the extent that the Debtors identify additional Utility Providers, the Debtors shall file amendments to the Utility Service List, and shall serve copies of this Interim Order, including the Adequate Assurance Procedures, and any final order (when and if entered) on such newly-identified Utility Providers. Any Utility Provider subsequently added to the Utility Service List shall be bound by this Interim Order and the Adequate Assurance Procedures.

8.    In accordance with this Interim Order and any other Order of this Court, each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in the Motion is directed to receive, process, honor, and pay all such checks presented for payment of the obligations described in the Motion and fund all requests made by the Debtors related thereto to the extent that sufficient funds are on deposit in such amounts.

4

10136575-2

9.      The Debtors' service of the Motion and this Interim Order upon the Utility Services List shall not constitute an admission or concession that each such entity is a "utility" within the meaning of Bankruptcy Code section 366, and the Debtors reserve all rights and defenses with respect thereto.

10.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Interim Order or any payment made pursuant to this Interim Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtors, a waiver of the Debtors' rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under Bankruptcy Code section 365.

11.     Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any interim or final order entered by the Court approving the Debtors' entry into any post-petition debtor in possession financing facility (the "DIP Financing Order"). To the extent that there is any inconsistency between the terms of this Order and the DIP Financing Order, the terms of the DIP Financing Order shall control.

12.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

13.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

14.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

10136575-2

16.     The Court shall conduct a final hearing on the Motion on **December        , 2020 at
         a.m./p.m. by VIDEO CONFERENCE.**

17.     **\*\*IMPORTANT\*\*** The hearing scheduled by this Order will take place only by
video conference. **DO NOT GO TO THE COURTHOUSE**. Attorneys must advise their clients
not to appear at the courthouse. To participate in the hearing by video conference please refer to
the instructions under the name of the presiding Judge on the Court's web site,
www.flsb.uscourts.gov.

18.     To register for the video conference, manually enter the following registration
link in a browser:


19.     **PLEASE NOTE**: No person may record the proceedings from any location by
any means. The audio recording maintained by the Court will be the sole basis for creation of a
transcript that constitutes the official record of the hearing. Although conducted using video
conferencing technology, the hearing is a court proceeding. The formalities of the courtroom
must be observed. All participants must dress appropriately, exercise civility, and otherwise
conduct themselves in a manner consistent with the dignity of the Court.

20.     This Court retains jurisdiction to hear and determine all matters arising from or
related to the interpretation or implementation of this Interim Order.

                              #    #    #

Submitted by:
Paul A. Avron
pavron@bergersingerman.com
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

10136575-2

*(Paul A. Avron, Esq. is directed to serve a copy of this order on interested parties and file with the Court a certificate of service.)*

7